UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

YELTON, ET AL.                          CIVIL ACTION

VERSUS                                  NO: 09-3144 c/w
                                        09-4197

PHI, INC., ET AL.                       SECTION: J(4)

**ORDER AND REASONS**

Before the Court are Defendant PHI, Inc.'s, **Motion to Disqualify Expert (Rec. Doc. 491)**, Plaintiff Carley Schoen's **Memorandum in Opposition (Rec. Doc. 496)**, and PHI's **Reply Memorandum in Support (Rec. Doc. 507)**.

**PROCEDURAL HISTORY AND BACKGROUND FACTS**

On January 4, 2009, a helicopter transporting nine individuals (7 passengers and 2 PHI employees) crashed due to a "bird strike" just south of Morgan City, Louisiana.  The crash resulted in the death of 8 individuals and caused severe injuries to the lone survivor, Steven Yelton.  This action commenced in March 2009 when Yelton and other Plaintiffs filed suit for damages stemming from the helicopter crash.

Ms. Schoen, on behalf of her minor son Charles Landen Schoen Nelson, is one of the Plaintiffs who filed suit for damages. Specifically related to PHI, the operator of the helicopter, Ms. Schoen asserts that PHI was negligent in its operation, maintenance, and installation of one or more defective components of the helicopter.  On March 29, 2011, counsel for Ms. Schoen informed counsel for PHI that he hired Vaughn R. Ross as an

expert in the case.   PHI now moves to disqualify Mr. Ross as an expert witness due to Mr. Ross' previous history with PHI.

### THE PARTIES' ARGUMENTS

In its Motion to Disqualify Expert (Rec. Doc. 491), PHI argues that the Court should disqualify Mr. Ross as an expert witness for Ms. Schoen because he testified as an expert on behalf of PHI in a lawsuit involving another PHI helicopter accident a few years ago (the "Tucker litigation") that had substantially similar issues to the instant matter, and Mr. Ross obtained privileged and confidential information pursuant to that relationship that could be relevant to the instant suit. Regarding Mr. Ross' involvement in the Tucker litigation, PHI claims (1) that Mr. Ross gave his expert opinion as to the cause of the accident in both deposition and at trial; (2) that counsel for PHI met with Mr. Ross at length during trial preparation; (3) that Mr. Ross was involved with counsel for PHI in the development of trial strategy and the themes for trial; (4) that counsel for PHI disclosed to Mr. Ross the strengths and potential weaknesses of certain PHI maintenance, operations, and piloting procedures and how those impacted the claims and defenses in the case; (5) that Mr. Ross assisted counsel for PHI in preparing PHI's witnesses for their trial testimony; and (6) that Mr. Ross became familiar with counsel for PHI and learned the strategies and methods used by them prior to and during trial.   PHI states

that the same lead trial attorneys that were involved in the
Tucker litigation are the lead trial attorneys in the instant
lawsuit by Ms. Schoen, so Mr. Ross should be disqualified as her
expert witness.

In her Memorandum in Opposition (Rec. Doc. 496), Ms. Schoen
argues that Mr. Ross should not be disqualified as an expert
witness because any information that Mr. Ross allegedly received
from PHI in the Tucker litigation was already known and was not
confidential, privileged, or related to the instant suit.
Moreover, PHI has not met its burden of proof to disqualify Mr.
Ross because there was no long-standing relationship between Mr.
Ross and PHI, and public policy requires that Mr. Ross be allowed
to assist Ms. Schoen with his expert testimony.  Regarding the
relationship between Mr. Ross and PHI, Ms. Schoen claims (1) that
Mr. Ross has worked as an expert in at least three cases in which
PHI was directly adverse to the party Mr. Ross was assisting; (2)
that Mr. Ross believes that he has worked against PHI on many
other cases in which PHI was involved but not a named defendant;
(3) that Mr. Ross was hired by Randy J. Unger in the Tucker
litigation, who was originally adverse to PHI, and that Mr. Ross
assisted PHI in the Tucker litigation on behalf of Mr. Unger
after Mr. Unger and PHI joined their efforts; (4) that Mr. Ross
has been working on behalf of Ms. Schoen since January 2011 and
has spent considerable time developing his expert opinion

regarding the instant suit; (5) that Mr. Ross did not receive confidential information from PHI in the Tucker litigation because all of the information he received was part of public knowledge; (6) that Mr. Ross had already developed his expert opinion for Mr. Unger regarding the Tucker litigation before he began working with PHI; (7) that all of Mr. Ross' involvement in the Tucker litigation was at the direction of Mr. Unger, not PHI; and (8) that any PHI trial strategy shared with Mr. Ross during the Tucker litigation was observed by the general public during the trial.

In its Reply Memorandum in Support (Rec. Doc. 507), PHI states that the arguments presented by Ms. Schoen are insufficient to preclude Mr. Ross from being disqualified as an expert witness in this case.  PHI asserts (1) that the fact that Mr. Ross was initially retained by Mr. Unger in the Tucker litigation is irrelevant because Mr. Ross ended up working with PHI for several weeks; (2) that the fact that Mr. Ross was directed by Mr. Unger to attend trial preparation meetings in the Tucker litigation is irrelevant because what matters is that Mr. Ross was at the meetings; (3) that Mr. Ross did indeed receive confidential information during preparations in the Tucker litigation; (4) that the subject-matter of the instant suit is substantially similar to the Tucker litigation; (5) and that Ms. Schoen has not shown that she will be unduly burdened by having

to find another expert witness.

### DISCUSSION

"Federal courts have the inherent power to disqualify experts, although cases that grant disqualification are rare." Koch Refining Co. v. Jennifer L. Boudreaux M/V, 85 F.3d 1178, 1181 (5th Cir. 1996) (citation omitted). In determining whether an expert witness should be disqualified, the Fifth Circuit Court of Appeals has articulated a two-part test: (1) whether it was "objectively reasonable for the first party who claims to have retained the expert to conclude that a confidential relationship existed" and (2) whether any "confidential or privileged information [was] disclosed by the first party to the expert." Id. An assumption of confidentiality is reasonable when there has been a "longstanding series of interactions" between the expert and party "which have more likely than not coalesced to create a basic understanding of [the restraining party's] modus operandi, patterns of operation, decision-making process, and the like." Id. at 1182 (quotations omitted). Confidential information could include "discussion of the [retaining party's] strategies in the litigation, the kinds of experts [the party] expected to retain, [the party's] views of the strengths and weaknesses of each side, the role of each of the [party's] witnesses to be hired, and anticipated defenses. Id. at 1182 (quotations omitted). In order for an expert witness to be

disqualified, an affirmative answer must be given to both parts
of the test, and the party seeking disqualification bears the
burden of proving that disqualification is warranted.  Id. at
1181.

The Fifth Circuit has also held that courts should consider
whether the public interest weighs in favor of disqualifying the
expert.  Id.  Specifically, "[t]he main policy objectives
militating against disqualification are ensuring that parties
have access to expert witnesses who possess specialized knowledge
and allowing experts to pursue their professional calling."  Id.
at 1183 (quotations omitted).  Thus, courts should consider
"whether another expert is available and whether the opposing
party had time to hire him or her before trial."  Id.

In this case, the Court finds that PHI has not met its
burden of proving that disqualification is warranted.  Regarding
the first part of the disqualification test, the Court is not
convinced that Mr. Ross' interaction with PHI in the Tucker
litigation is enough to establish a "longstanding series of
interactions" in order to create the assumption of a confidential
relationship.  In Koch, the Fifth Circuit found that the first
party's three-year relationship with an expert witness was enough
to establish a confidential relationship that warranted
disqualification.  Id. at 1181-84.  In this case, the several-
week relationship between Mr. Ross and PHI during the Tucker

litigation does not give rise to the same assumption of confidentiality.  However, even if PHI were able to establish the existence of a confidential relationship with Mr. Ross, the Court does not find that it will be able to meet its burden of proof under the second part of the disqualification test.  The Court finds that PHI has not plead enough facts to establish what confidential or privileged information, if any, was disclosed to Mr. Ross during the Tucker litigation.  Finally, the Court finds that the public interest weighs against disqualifying Mr. Ross because he has already done significant work for Ms. Schoen, and requiring Ms. Schoen to search for and hire another, potentially non-local, expert would be unduly burdensome and costly.

Accordingly, **IT IS ORDERED** that PHI's **Motion to Disqualify Expert (Rec. Doc. 491)** is **DENIED**.


New Orleans, Louisiana, this 8th day of June, 2011.

_____
CARL J. BARBIER
U.S. DISTRICT COURT JUDGE