## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KELLY YELTON, INDIVIDUALLY AND ON BEHALF OF HER MINOR CHILDREN, K.D., L.Y., AND L.R.L.Y., ET AL.**

**CIVIL ACTION**

**VERSUS**

**NO. 09-3144**
**C/W 09-3475; 09-3551; 09-3459; 09-3814; 09-3496; 09-3847; 09-4197; 09-04182; 09-4350; 10-0008; 10-1328**

**PHI INC., ET AL.**

**SECTION: "J" (4)**

### ORDER

Before the Court is **Defendant PHI Inc.'s Motion to Fix Attorneys' Fees and Costs (R. Doc. 707)**, filed by Defendant PHI, Inc. ("PHI"), seeking an order from this Court fixing the amount of costs and attorney's fees to be awarded to it, pursuant to the Court's December 7, 2011 order, which granted PHI costs and attorney's fees reasonably incurred from the date Defendant Sikorsky Aircraft Corporation ("Sikorsky") produced Dr. Wonsub Kim's[1] expert report to PHI to the present, related to PHI's investigation of Sikorsky's spoliation of evidence, the taking of the additional depositions related to Dr. Kim's report, Sikorsky's failure to preserve Dr. Kim's data files, and PHI's written submissions to the Court.  (R. Doc. 704.)  The motion is opposed.  (R. Doc. 751.)

I.    **Factual Background**

This product liability lawsuit arose as a result of the January 4, 2009, crash of a Sikorsky S-

76C++ helicopter, N748P, in Terrebonne Parish, Louisiana, which caused the death of seven people and severely injured the only surviving passenger, Steven Yelton.  The accident allegedly occurred as a result of a female red tailed hawk striking the windscreen of the helicopter, resulting in a loss of engine power.

During the course of the litigation, PHI sought information regarding Sikorsky's investigation, testing, analysis, or studies of the helicopter windshield, cockpit engine controls, engine control quadrant throttle lever, or low rotor warning system.  Initially, Sikorsky responded that it had no responsive documents related to testing.  However, over a year and half later, it finally produced documents regarding Dr. Kim's tests, analysis, and report.  Additionally, the computer files and data used by Dr. Kim were deleted, due to Sikorsky's failure to include him in the litigation hold.

As a result, the Court, upon motion by PHI and Cross-Claimant National Union Fire Assurance Company of Louisiana ("National Union"), issued an order issuing sanctions and recommending an adverse inference against Sikorsky.  (R. Doc. 74.)  The order also awarded reasonable costs and attorney's fees to PHI.  The order required PHI to file a motion fixing attorney's fees in the record along with: (1) an affidavit attesting to each attorney's education, background, skills and experience; (2) sufficient evidence of rates charged in similar cases by other local attorneys with similar experience, skill and reputation; and (3) the documentation required by Local Rule 54.2.

In compliance with the order, PHI filed the instant motion, seeking an order from this Court fixing the amount of costs and attorney's fees owed to PHI.  PHI seeks a total of $2,019,355.22 in costs and attorney's fees, including $987,084.00 for 3,543.5 hours of work and $1,032,271.22 in

costs. PHI contends that these amounts were reasonably and necessarily incurred from the date Sikorsky produced Dr. Kim's report to PHI to the present.

Sikorsky opposes the motion and argues that PHI's request for costs and attorney's fees is grossly inflated, as it includes costs and attorney's fees entries that are wholly unrelated to PHI's investigation of Sikorsky's spoliation of evidence, the taking of the additional depositions related to Dr. Kim's report, Sikorsky's failure to preserve Dr. Kim's data files, and PHI's written submissions to the Court. Thus, PHI's request for costs and attorney's fees should be substantially reduced. It further contends that PHI failed to provide it with actual attorney and expert invoices. Thus, it should not be required to pay the amount requested by PHI.

Sikorsky also contends that the expert fees incurred by PHI will not be paid by PHI nor National Union, and that most of the attorney time entries are impermissibly vague and/or do not explain how they fall within the parameters set out by the Court. Sikorsky further contends that the costs and attorney's fees requested relate to almost all of the legal expenses allegedly incurred by PHI in this litigation, or work not done at all.

Having set forth the position of both parties, the Court will now proceed with its analysis of the subject matter.

## II.   <u>Standard of Review</u>

Plaintiffs' complaint, which was filed in this Federal District Court, alleged violation of federal law and state products liability and negligence law. As a result, the lodestar calculation of the reasonable attorney's fees is applicable.[2]

The Supreme Court has indicated that the "lodestar" calculation is the "most useful starting point" for determining the award of attorney's fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

The lodestar equals "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* The lodestar is presumed to yield a reasonable fee. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). After determining the lodestar, the court must then consider the applicability and weight of the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[3] The court can make upward or downward adjustments to the lodestar figure if the *Johnson* factors warrant such modifications. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). However, the lodestar should be modified only in exceptional cases. *Id.*

After the calculation of the lodestar, the burden then shifts to the party opposing the fee to contest the reasonableness of the hourly rate requested or the reasonableness of the hours expended "by affidavit or brief with sufficient specificity to give fee applicants notice" of the objections. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

## III.   <u>Analysis</u>

PHI contends that the cost and attorney's fees it requests were reasonably incurred from the date Sikorsky produced Dr. Kim's report, and relate to PHI's investigation of Sikorsky's spoliation of evidence, the taking of the additional depositions related to Dr. Kim's report, Sikorsky's failure to preserve Dr. Kim's data files, and PHI's written submissions to the Court. PHI seeks attorney's fees for fourteen (14) different attorneys, whose hourly rates range from $190.00 to $400.00 per hour. Additionally, PHI seeks fees for the work performed by five (5) paralegals, whose hourly rate is $140.00 per hour.

PHI did not, however, provide the Court with the required affidavits for either the attorneys or the paralegals.[4] Instead, it provided each attorney's biography taken from the law firm's website,

or a resume. While not technically compliant with the Court's order, the Court will accept these website biographies and resumes as adequate proof of each attorney's education, background, and experience. Not having received any documents evidencing each paralegal's education, background, or experience, the Court hereby denies PHI's request for fees associated with the worked performed by them.

| Paralegal | Hours | Rate | Total amount excluded |
|---|---|---|---|
| Dessa Watson-Ferris | 109.10 | $140.00 | $15,274.00 |
| Tonja Sanchez | 8.70 | $140.00 | $1,218.00 |
| Jodi Jesser | 8.80 | $140.00 | $1,232.00 |
| Paulette Keheley | 12.00 | $140.00 | $1,680.00 |
| Tammy Hintz | 497.20 | $140.00 | $69,608.00 |
| **Total Excluded** | | | **$89,012.00** |

Therefore, these billing entries are excluded from consideration.

### A.    Calculating a Reasonable Hourly Rate

In support of its motion, PHI submitted the website biographies for Martin E. Rose ("M. Rose"), Don Swaim ("Swaim"), Randall K. Theunissen ("Theunissen"), S. Brian Perry ("Perry"), Ross Cunningham ("R. Cunningham"), Alan J. Meche ("Meche"), Steve Sanfelippo ("Sanfelippo"), Tammy Cole ("Cole"), Elizabeth Cunningham ("E. Cunningham"), Elizabeth Lemoine ("Lemoine"), Bryan Rose ("B. Rose"), and Alex Whitman ("Whitman"). PHI submitted the resumes of the following lawyers Stephen L. Baker ("Baker") and Stephanie L. Reaugh ("Reaugh").

M. Rose, received his J. D. from Southwestern University in 1974.[5] He has been practicing law for thirty-seven (37) years, and is admitted to practice law in all of the state Courts in Texas and California as well as all of the federal courts in Texas , California, and Colorado. According to his

biography, he has tried complex cases in fourteen (14) states, and focuses his practice on tort-personal injury cases, commercial disputes, and intellectual property disputes.  His billable hourly rate is $400.00.

Swaim received his J.D. from Baylor Law School in 1982.[6]  He has been practicing law for twenty-nine (29) years.  He is licensed in the State of Texas, and is admitted to practice in the U.S. District Court for Northern, Southern, Western, and Eastern Districts of Texas and the Fifth and Sixth Circuit Courts of Appeals.  He has represented aircraft owners, operators, and manufacturers. His billable hourly rate is $350.00.

Theunissen received his J.D. from Louisiana State University in 1977.[7]  He has been practicing law in the State of Louisiana for thirty-four (34) years, and has been licensed in the State of Texas for seventeen (17) years.  According to his biography, he is noted for his maritime practice and is a featured speaker at various maritime seminars.  His billable hourly rate is $330.00.

Perry received his J.D. from Loyola University in 1997.[8]  He has been practicing law in the State of Louisiana for fourteen (14) years.  According to his biography, he generally represents pipeline companies, offshore platform operators, crew boats, drilling companies and exploration companies.  His billable hourly rate is $330.00.

R. Cunningham received his J.D. in 1988 from Southern Methodist University Law School.[9] Cunningham has been licensed to practice in the state of Texas for thirteen (13) years.  His biography indicates that he handles complex litigation involving aircraft disasters, product liability, construction defects, catastrophic personal injury, and commercial breach of contract cases.  His billable hourly rate is $330.00.

Meche received his J.D. in 1999 from South Texas College of Law.[10]  He has been practicing law for twelve (12) years, and is a partner in the Lafayette office of the Allen & Gooch law firm. Meche concentrates his practice in the areas of maritime defense and personal injury.  His billable hourly rate is $330.00.

Sanfelippo received his J.D. in 2000 from St. Mary's University School of Law.[11]  He has been practicing law for eleven (11) years.  He is a partner in the Rose Walker's appellate department and is responsible for handling all appellate and insurance coverage matters.  His billable hourly rate is $300.00.

Cole received her J.D. in 1996 from the University of Texas School of Law.[12]  She has been practicing law for fifteen (15) years, and is licensed in the State of Texas.  Her biography indicates that she works in Rose Walker's commercial litigation department, and that her practice includes products liability cases.  Her billable hourly rate is $300.00.

E. Cunningham received her J.D. in 1998 from The George Washington University School of Law.[13]  She has been licensed to practice law for thirteen (13) years.  Her areas of practice include commercial, employment, and product liability defense.  Her billable hourly rate is $300.00.

Lemoine received her J.D. in 2000 from The George Washington University School of Law.[14]  She has been licensed to practice law for eleven (11) years.  Her areas of practice include products liability, complex commercial matters, and class actions.  Her billable hourly rate is $300.00.

Rose received his J.D. in 2007 from St. Mary's University School of Law.[15]  He has been practicing law for four (4) years.  His practice includes aircraft disasters, products liability, catastrophic personal injury, and commercial disputes.  His billable hourly rate is $225.00.

7

Baker received his J.D. in 2008 from Baylor Law School.[16]  Baker has been practicing law for three (3) years at Rose Walker in Dallas, Texas.  According to his resume, he handles general discovery issues, and reviews and analyzes discovery in complex litigation matters.  His billable hourly rate is $200.00.

Whitman received his J.D. in 2010 from Emory University School of Law.[17]  He is a former federal judicial law clerk.  His billable hourly rate is $190.00.

Reaugh received her J.D. in 1999 from the University of Houston Law Center.[18]  Her resume, however, is not updated.  According to her resume, she worked at Hunton & Williams as recent as 2008.  Her resume does not indicate, however, that she is currently employed at Rose Walker.  Nonetheless, her billing entries are included in PHI's motion.  The Court's independent research reveals that, according to the Texas State Bar website, Reaugh is currently employed at Rose Walker.  PHI indicates that she has eight (8) years of experience, and that her billable hourly rate is $275.00.

Attorney's fees must be calculated at the "prevailing market rates in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  The applicant bears the burden of producing satisfactory evidence that the requested rate is aligned with prevailing market rates.  *See NAACP v. City of Evergreen*, 812 F.2d 1332, 1338 (11th Cir. 1987).  Satisfactory evidence of the reasonableness of the rate necessarily includes an affidavit of the attorney performing the work and information of rates actually billed and paid in similar lawsuits.  *Blum*, 465 U.S. at 896, n.11.  However, mere testimony that a given fee is reasonable is not satisfactory evidence of a market rate.  *See Hensley*, 461 U.S. at 439, n.15.

Rates may be adduced through direct or opinion evidence as to what local attorneys charge under similar circumstances.  The weight to be given to the opinion evidence is affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge.  *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988); *see also White v. Imperial Adjustment Corp.*, No. 99-03804, 2005 WL 1578810, at *8 (E.D. La. Jun. 28, 2005) (Engelhardt, J.) (recognizing that attorneys customarily charge their highest rates only for trial work, and lower rates should be charged for routine work requiring less extraordinary skill and experience).

Where "an attorney's customary billing rate is the rate at which the attorney requests the lodestar to be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed.  When that rate is not contested, it is *prima facie* reasonable."  *La. Power & Light*, 50 F.3d at 328.

PHI acknowledges that some of its attorneys charged higher rates than others, despite having less experience in terms of years of practice.  PHI contends, however, that these rates are reasonable and justified because of each attorney's experience and specialized skills.  The specialized training and experience cited by PHI includes aviation litigation experience and former judicial law clerks to Federal Judges.

In opposition, Sikorsky points out that PHI's motion seeks attorney's fees for fourteen (14) different lawyers.  Sikorsky contends that the motion does not seek reasonable rates because the rates sought are not consistent with the rates charged in the New Orleans market, where the claim was filed.  Sikorsky further contends that the affidavit of Richard Broussard, should be disregarded by the Court because, while he suggests that the rates sought are reasonable in the New Orleans

market, he is a Lafayette, Louisiana-based attorney without knowledge of the rates charged in New Orleans.

The Court finds that PHI has not provided the Court with adequate support for the requested billing rates for the less experienced attorneys namely, Whitman, B. Rose, Baker, and Reaugh. *See Creecy v. Metro. Prop. & Cas. Ins. Co.*, No. 06-9307, 2008 WL 553178, at *3 (E.D. La. Feb. 28, 2008) (Roby, J.) (awarding $175.00 an hour to a lawyer who had practiced law for five (5) years and $200.00 an hour to an attorney with eleven (11) years of experience); *Drs. Le and Mui, Family Med. v. St. Paul Travelers*, No. 06-10015, 2007 WL 4547491, at *2-3 (E.D. La. Dec. 19, 2007) (Roby, J.) (awarding hourly rates of $175.00 to an attorney with seven (7) years of legal experience and $200.00 for an attorney with eleven (11) years of experience).  The Court therefore finds that a reasonable rate for Whitman, B. Rose, Baker is $170.00 per hour and $195.00 for Reaugh.

Regarding the more experienced attorneys, Meche, E. Cunningham, Sanfelippo, Perry, and Lemoine, whose experience ranges from 11-15 years, the Court finds that $250.00 is reasonable rate, based upon the rates awarded in this District and each attorney's background and experience. *St. Paul Travelers*, 2007 WL 4547491, at *2-3.

PHI also seeks $330.00 per hour for R. Cunningham (thirteen (13) years of experience), $350.00 per hour for Swaim (twenty-nine (29) years of experience), and $400.00 per hour for M. Rose (thirty-seven (37) years of experience), and $330.00 per hour for Theunissen (thirty-four (34) years of experience).  PHI suggests that the rates are reflective of the nature of the work performed by its attorneys since the discovery of Dr. Kim's report.

In support of its position, PHI refers the court to *Hornbeck Offshore Servs., L.L.C. v. Salazar* No.10-1663, 2011 WL 2214765 ( E.D. La. June 1, 2011) (setting reasonable hourly rates for partners

with sixteen (16) to thirty-seven (37) years of experience in a complex litigation case at $300.00 to $450.00 per hour, and for associates with one (1) to five (5) years of experience at $180.00 to $200.00). However, PHI's motion requests a rate of $330.00 per hour for R. Cunningham, who has only thirteen (13) years experience. As a result, the Court finds that an appropriate rate for R. Cunningham, as well as the other attorneys in his experience range, is $250.00 per hour.

The Court further finds that PHI's request for a rate of $330.00 per hour for Swaim and Theunissen is reasonable based on their years of experience. *See Hebert v. Rodriguez*, No. 08-5240, 2010 WL 2360718, at *2 (E.D. La. June 8, 2010) (Barbier, J) (awarding $300.00 per hour to "a seasoned civil rights attorney with over 33 years of experience"); s*ee also Peacock v. U.S.*, No. 07-0988, 2009 WL 3094953, at * 2 (E.D. La. Sept. 21, 2009) (Knowles, J.) ($350 per hour is reasonable given lawyers background, education experience and the nature and complexity of the matter).

Regarding PHI's request for a rate of $400.00 per hour for M. Rose (thirty-seven (37) years), the Court finds that the rate is reasonable. *See Hornbeck Offshore Servs., L.L.C.*, 2011 WL 2214765, at *8.

Having determined the reasonable hourly rates, the court will proceed with assessing the reasonableness of the billing entries.

### B.   Determining the Reasonable Hours Expended

PHI contends that the hours of work submitted for reimbursement are reasonable. PHI suggests further that it exercised billing judgment, as it only requested fees for the activities that fall within the parameters of the Court's order.

In opposition, Sikorsky argues that PHI's fee request is excessive and unreasonable. Sikorsky contends that 273 days elapsed between the date of Sikorsky's production of Dr. Kim's report and

the Court's sanctions order.  During that time frame PHI claims that it's attorneys expended 3,362.80 hours investigating Sikorsky's spoliation, taking additional depositions of witnesses related to Dr. Kim's data files, and drafting related written submissions to the Court.  Under this theory, PHI's lawyers would have worked 12.30 hours per day, including all weekends and holidays that occurred during that time frame.  Sikorsky therefore contends that PHI fee request is "unbelievable."

Sikorsky further points out that by the date it produced Dr. Kim's report to PHI, PHI had settled with every Louisiana plaintiff except Carly Schoen ("Schoen"), who brought suit on behalf of her minor child.  It further contends that PHI eventually settled with Schoen.  Sikorsky also contends that PHI's hull claim was settled in November and December 2011 and the Alabama litigation closed on March 18, 2011.  As a result, the only remaining claims were the claim by Schoen, and the Cantu claim in Texas state court, in which Sikorsky was a co-defendant.  Sikorsky contends that the instant motion seeks reimbursement of almost all of PHI's legal expenses allegedly incurred in this litigation, and not only the fees reasonably incurred in association with Dr. Kim's report, data, and files.

In order to properly determine whether there should be a reduction in the amount of time expended, a review of the billing records submitted by PHI must be undertaken by the Court to exclude any excessive, redundant, or unnecessary hours.  Also, it is noted that Sikorsky is not required to pay for duplicative work among the attorneys.  *Raspanti v. United States Dept. of the Army*, No. 00-2379, 2001 WL 1081375, at *6 (E.D. La. Sept. 10, 2001).

In reviewing attorney's fees applications, the court may also reduce or eliminate hours if the documentation of those hours is "vague or incomplete," and must consider whether proper billing judgment was exercised.  *Lalla v. City of New Orleans*, 161 F.Supp.2d 686, 706 (E.D. La. Apr. 4,

2001).  Attorneys who submit fee requests must exercise billing judgment, write off excessive, redundant, or unproductive time, and do not have the right to bill for inadequately documented time or on issues which they do not prevail.  *Id.* (citing *Walker v. U.S. Dept. of Housing & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996)).

The record reflects that PHI's initially submitted a spreadsheet of hours recorded by its attorneys and not its original attorney invoices.  Yet, it sought a significant sum, along with reimbursement of its expert expenses.  Subsequently, PHI filed its billing invoices.  The total amount of hours billed in the subsequently submitted invoices is 3,836.30, including the hours spent drafting the instant motion.  This amount is 292.80 hours more than the number of hours PHI seeks reimbursement for in its motion.

As a result of PHI's failure to submit its original attorney invoices, Sikorsky requested an extension of time to file its opposition to the motion and limited discovery.  On January 6, 2012, the Court held a status conference with both parties, during which it upheld its original order and again instructed PHI to submit (1) its original invoices and (2) expert invoices so that Sikorsky could fully and appropriately prepare memorandum in opposition.  (R. Doc. 730.)  In opposition, Sikorsky contends that despite this Court's instructions, PHI never provided it with its attorney invoices. Instead, PHI provided it with a spreadsheet, drafted by PHI, of the purported hours worked by its attorneys.

The Court finds that PHI has exercised very limited billing judgment, which is insufficient under the circumstances and in contravention of this Court's order and instructions.  The Court is further guided in its analysis by the reasoning of the Sixth Circuit Court of Appeals in an analogous case.  *See Coulter v. State of Tenn.*, 805 F.2d 146 (6th Cir. 1986).  In *Coulter*, a Title VII sex

discrimination action, the plaintiff was represented by two attorneys - a "lead" attorney who conducted the trial and deposition examinations, and another attorney who assisted in legal research, conceptualizations of the case, and reviewed documents and court papers. The Court noted that the "non-lead" attorney's efforts, while contributing to the successful outcome, warranted reduction as duplication of effort. Therefore, the Court reduced the "non-lead" attorney's pretrial preparation hours by fifty percent. *Id.* at 151.

The fee seeker's attorneys are "charged with the burden of showing the reasonableness of the hours they bill and, accordingly, . . . proving that they exercised billing judgment." *Walker*, 99 F.3d at 770. When billing judgment is lacking, the court must exclude from the lodestar calculation the hours that were not reasonably expended. *Hensley*, 461 U.S. at 434.[19]

A careful review of the attorney invoices provided to the Court illustrates that despite PHI's representation it paired down the original fee application so that it complied with the Court's instructions, it failed to eliminate clearly vague, block billed, and irrelevant time entries. While the task of dissecting the submitted application is tedious, the undersigned conducted the required analysis as illustrated below.

### 1.     Vague Entries

It is well settled that supporting documentation for attorney's fees must be of sufficient detail and probative value to enable the court to "determine with a high degree of certainty" that the billing is reasonable. *Miss. State Chapter Operation Push v. Mabus*, 788 F.Supp. 1406, 1416 (N.D. Miss. 1992); *see League of United Latin American Citizens No. 4552 v. Roscoe ISD*, 119 F.3d 1228 (5th Cir. 1997) (noting that litigants "take their chances" when submitting vague fee applications). Descriptions such as " legal issues," " conference re: all aspects," and "call re: status" are vague

descriptions.  *In re Donovan*, 877 F.2d 982, 995 (D.C. Cir. 1989); *Lalla*, 161 F.Supp.2d at 706.

After reviewing the time records, the Court concludes that the following entries are vague, and while potentially related to PHI's motion for sanctions, a full allocation for the billing entries is not appropriate, such that only 50% of the value of the time will be allocated to these billing attorneys.

| Vague Entries | |
|---|---|
| Don Swaim | 1.7 hours[20] |
| Randall Theunissen | 0.25 hours[21] |
| Ross Cunningham | 267.10 hours[22] |
| Stephen L Baker | 22.30 hours[23] |

### 2.    Irrelevant Billing Entries

A review of the billing entries submitted by PHI reveals that many of the entries are not related to Dr. Kim's report, PHI's sanctions motion, or the instant motion.

By way of example, many of the billing entries are related to an appeal of an unrelated order, including the review and filing of the appellate brief.  Further, many of the billing entries are for hours spent attempting to settle other cases in different jurisdictions arising out of the helicopter crash, rather than time related to the delayed discovery or spoilation of Dr. Kim's data and files. PHI's motion also contains billing entries for time spent deposing representatives of the FAA, as well as time spent securing documents from the FAA, unrelated to the delayed discovery or spoilation.  PHI failed to exercise reasonable billing judgment in submitting the subject motion.  As a result, a significant portion of the amount requested will be disallowed as demonstrated below:

## Billing Entries Not Related to

## Discovery/Spoilation

| | |
|---|---|
| Don Swaim | 179.3 hours[24] |
| Ross Cunningham | 281.4 hours[25] |
| Steve D. Sanfelippo | 250.49 hours[26] |
| Stephen L. Baker | 186.70 hours[27] |
| Tammy Cole | 31.30 hours[28] |
| Randall K. Theunissen | 92.60 hours[29] |
| S. Brian Perry | 0.50 hours[30] |

| Reasonable Attorney's Fees | | | | | | |
|---|---|---|---|---|---|---|
| **Billing Attorney** | **Total Hours Billed** | **Vague Entries** | **Irrelevant Entries** | **Net Reasonable Hours** | **Reasonable Rate** | **Reasonable Fee** |
| *M. Rose* | 2.10 | | | 2.10 | $400.00 | **$840.00** |
| *Swaim* | 385.10 | 1.70 | 179.30 | 204.10 | $330.00 | **$67,353.00** |
| *Theunissen* | 123.40 | 0.25 | 92.60 | 30.55 | $330.00 | **$10,081.50** |
| *Perry* | 43.80 | | 0.50 | 43.30 | $250.00 | **$10,825.00** |
| *R. Cunningham* | 1,201.00 | 267.10 | 281.40 | 652.50 | $250.00 | **$163,125.00** |
| *Meche* | 0.40 | | | 0.40 | $250.00 | **$100.00** |
| *Sanfelippo* | 323.30 | | 250.49 | 72.81 | $250.00 | **$18,202.50** |
| *Cole* | 40.80 | | 31.30 | 9.50 | $250.00 | **$2,375.00** |
| *E. Cunningham* | 588.20 | | | 588.20 | $250.00 | **$147,050.00** |
| *Lemoine* | 3.10 | | | 3.10 | $250.00 | **$775.00** |
| *B. Rose* | 16.60 | | | 16.60 | $170.00 | **$2,822.00** |
| *Whitman* | 155.30 | | | 155.30 | $170.00 | **$26,401.00** |
| *Baker* | 923.50 | 22.30 | 186.70 | 714.50 | $170.00 | **$121,465.00** |
| *Reaugh* | 29.70 | | | 29.70 | $195.00 | **$5,791.50** |
| *Billed before PHI's adjustment[31]* | 3,836.30 | | | | | |
| *Less billing judgment* | 292.80 | | | | | |
| *Net hours sought by PHI* | 3,543.50 | | | 2,522.66 | | |
| **Total Attorney's Fees Awarded[32]** | | | | | | **$577,206.50** |

C.    **Costs**

Next, PHI contends that it is entitled to recover all of its costs including expert costs because of the delayed production of Dr. Kim's report.  PHI notes that the Court's order awarded costs from the March 9, 2011 disclosure of Dr. Kim's report.  It contends, therefore, that it has reasonably incurred costs totaling $1,032,271.22, and requests that the court award the costs as a sanction for Sikorsky's spoliation, concealment of evidence.[33]

PHI contends that it incurred considerable compensable costs as part of its efforts to determine the scope of Sikorsky's spoliation, and to fully litigate the issues surrounding Dr. Kim's report and the issues it raised, including obtaining hearing and deposition transcripts, copying charges, and reasonable postage.[34]  PHI points out that because the Court specifically provided for fees and costs expended on the taking of additional depositions related to Dr. Kim's report, it also included the costs of traveling to and transcribing the depositions of the aforementioned deponents. It further seeks reimbursement for its expert expenses directly related to Dr. Kim's report and analysis.[35]

Regarding reasonable costs, courts have held that certain expenses incurred by a prevailing party, including postage, reproduction, and phone bills may be included in attorney fee awards.  *See Gorini v. AMP, Inc.*, No. 99-2215, 2004 WL 1354465, at *7 (M.D. Pa. March 14, 2004).  Further, the Federal Rules of Civil Procedure require Sikorsky to pay PHI's expenses where, as here, the failure to comply with its discovery obligation was substantially justified or other circumstances would make an award of expenses unjust.  *See* Fed.R.Civ.P. 37(d)(3).

In considering PHI's request for costs, the Court finds that the costs requested exceed the scope of this Court's order and include costs that PHI incurred prior to the production of Dr. Kim's

report.  Further, the costs sought are largely undocumented.

For example, PHI contends that it incurred $62,307.77 in transcription costs for depositions. Yet, it failed to provide an invoice from the court reporting service it paid indicating when the depositions occurred and who was actually deposed.  PHI also failed to provide proof of the costs allegedly incurred for copying/outside printing, delivery services, out-of-state travel expenses, local travel expenses, meals, travel services fees, and litigation support.  As a result, the Court deems these costs unreasonable, and hereby excludes $ 208,309.48 in costs.[36]

Next, PHI contends that it should be awarded a total of $833,612.75 in expert costs, which are purportedly related to Dr. Kim's report and recreation of his lost data and files.  In support of its request, PHI submitted the affidavits of its experts, who describe and attempt to explain how their fees are directly related to Dr. Kim's report and the recreation of his lost data and files.  PHI contends that Sikorsky's attorneys abused the judicial process by concealing and destroying evidence,  misrepresenting facts, and making false statements to the Court and counsel.  PHI therefore contends that its expert costs were a direct result of Sikorsky's conduct.

In support of its request, PHI submitted the affidavit of Roch Shipley ("Shipley") of ProAaCI, who contends that due to delayed production of Dr. Kim's analysis, he was required to conduct additional work for PHI which resulted in an additional $176,158.29 in expert fees.[37] However, Shipley's affidavit falls short of explaining how the delayed production of Dr. Kim's report resulted in specific work that he otherwise would not have had to do.  A review of the invoices submitted fails to further indicate the scope of the additional work in relation to the late production of Dr. Kim's report. As a result, the Shipley or ProAACI "extra" costs totaling $176,158.29 are excluded from the recovery.

Next, PHI submitted the affidavit of Douglas E. Stimpson ("Stimpson") of Accident Investigations & Reconstruction.  Mr. Stimpson contends that his work in the case began on December 12, 2011 and ended on December 17, 2011, well before the delayed production of Dr. Kim's report.  He states, that PHI incurred $46,844.50 in expert fees related to the delayed production of Dr. Kim's report.

In opposition, Sikorsky contends that Stimpson was identified as an expert witness by PHI to provide testimony to rebut the anticipated opinions, observations and testimony of Vaughn Ross.  See R. Doc. 657, p. 93; R. Doc. 751, p. 35.

The Court notes that Stimpson mentions that he read Dr. Kim's reports.  However, neither his affidavit, nor the attendant invoices describe the nature of any additional work he was required to perform because of the delayed production or the inability to locate the supporting data and files Dr. Kim used to formulate his report.  Therefore, the Court finds that the $46,844.50 requested for the "additional" work purportedly performed by Stimpson is not sufficiently documented, and therefore not reasonable.

Next, PHI submitted the affidavit of Donald Gillespie ("Gillespie"), an aerospace structural engineer and consultant, who was retained by PHI to provide testimony and analysis regarding the reconstruction, failure, and mechanical systems of the subject helicopter.  Gillespie contends that he was retained by PHI in early August 2008 to assist it with the technical aspects of this litigation.  He further contends that in March 2010 he and Dr. John Meyer ("Meyer") began working on a computer simulation and analysis of the bird strike.  According to Gillespie, he advised PHI's attorneys that it would be extremely beneficial if they had access to certain Sikorsky design and fabrication documents and data, such as CATIA 3-D computer model files, structural engineering

files and reports, in addition to any computer simulation data.  He states that he assisted PHI's attorneys in drafting PHI's discovery requests, which sought the information he needed, including computer simulation data.  He argues that Sikorsky's failure to produce this information resulted in the need for PHI to engage engineers and technicians to hard-measure and/or laser scan virtually every piece of the S-76 forward canopy area in an effort to generate and or verify data required for the modeling effort.

After attending Dr. Kim's deposition, and receiving the data from Sikorsky, Gillespie states that he identified 7,258 files with no explanation of usage and no known naming convention or organization.  He contends that he was required to spend an inordinate amount of time going through the approximately 200 gigabytes of data in order to understand and review it.  He further contends that despite the attempted production by Sikorsky, a significant amount of data was not produced, namely the input pulses nor data defining the specifics of the out of the quadrant shaker table testing.

He opines that had he been provided with access to the Sikorsky design, engineering and modeling data, PHI would have saved more than a year and half of wasted effort attempting to recreate a reasonable and accurate set of engineering and material data for use in building a finite element model.  He therefore estimates that between March 11, 2011 and December 15, 2011, he charged $389,403 for time spent investigating Dr. Kim's report, data, and files, related depositions, and Sikorsky's document production, developing alternate data, and preparing the subject affidavit.

In opposition, Sikorsky argues that during Gillespie's deposition, which was taken shortly before the scheduled *Yelton* trial, he was asked about the whereabouts of any test results PHI obtained from any tests or analysis performed by him in connection with the instant lawsuit. Sikorsky further contends that while PHI started its own simulation and analysis, when Dr. Kim's

report was discovered and his data and files were made available, PHI's focused shifted, and it did not rely upon its previous work.  Sikorsky argues that because PHI's work was done before Dr. Kim's report was produced, by its very terms, it does not fall within the parameters of this Court's order and should be excluded.

PHI does not respond to this suggestion, but notes that it only seeks to recover expert fees that fall within the parameters of this Court's order.  The Court notes, however, that while Gillespie states that his fees were incurred after the production of Dr. Kim's report, its unclear how his fees are the result of additional work performed by him after the production of Dr. Kim's report, when Gillespie testified that R. Cunningham refused to permit him to produce the results of his independent simulation and analysis.

Further, Gillespie acknowledges in his affidavit that at the time he prepared the affidavit, he had not reviewed the S-92 model and data produced by Sikorsky.  Thus, the Court is not persuaded that the $389,403.00 requested amounts to the additional fees incurred by PHI in association with the delayed production of Dr. Kim's report - since Gillespie never reviewed Dr. Kim's S-92 model or the data.  Consequently, the court finds that the $389,403.00 requested is not a reasonable.

Finally, PHI submitted the affidavit of John Meyer ("Meyer"), a mechanical engineer who served as a accident investigation and reconstruction consultant.  He states that he was retained in August 2009 to assist with several technical aspects of this litigation, including the recreation and analysis of the bird strike that led to the helicopter crash.  Meyer contends that he worked with Gillespie on a computer simulation and analysis of the bird strike, and like Gillespie, felt that having access to certain Sikorsky design and fabrication documents, including electronic data such as CATIA 3-D, would have been helpful.  He alleges that he also attended Dr. Kim's deposition, and

like Gillespie, has not yet reviewed the S-92 model or its data.  He estimates that between March 11, 2011 and December 15, 2011, he charged Plaintiffs and PHI $221,206.96 in fees for time spent investigating Dr. Kim's report, attending related depositions, reviewing Sikorsky's document production, and preparing the subject affidavit.

Meyer contends that he spent time between March and December 2011 investigating Dr. Kim's report.  Yet, the subject of PHI's sanctions motion and this Court's subsequent order was the delayed production of Dr. Kim's report and his lost data and files, which Meyer acknowledges he had not reviewed at the time he prepared his December 16, 2011 affidavit.  The Court therefore finds that the $221,206.96 requested by PHI for the extra work purportedly done by Meyer as result of Sikorsky's delayed production and spoliation of Dr. Kim's data and files is not reasonably supported.  Therefore, it is excluded.

### D.    Adjusting the Lodestar

As indicated above, after the lodestar is determined, the Court may then adjust the lodestar upward or downward depending on the twelve factors set forth in *Johnson,* 488 F.2d at 717-19.  To the extent that any *Johnson* factors are subsumed in the lodestar, they should not be reconsidered when determining whether an adjustment to the lodestar is required.  *Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1047 (5th Cir. 1998).  The Court has carefully considered the *Johnson* factors and concluded that they do not warrant an upward or downward departure here.  Having considered each of the lodestar factors in this matter, the Court finds that an adjustment upward is not warranted.

### IV.    Conclusion

Accordingly,

**IT IS ORDERED** that **Defendant PHI Inc.'s Motion to Fix Attorneys' Fees and Costs**

(**R. Doc. 707**) is **GRANTED IN PART** and **DENIED IN PART**.  The Court finds that attorney's fees in the amount of **$577,206.50** are reasonable in this matter.

**IT IS FURTHER ORDERED** that Defendant Sikorsky Aircraft Corporation shall submit payment to Defendant PHI, Inc. in the amount of **$577,206.50** no later then thirty (30) days from the date of this order.

New Orleans, Louisiana, this 14th day of August 2012.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

[1] As discussed at length in the Court's order awarding reasonable costs and attorney's fees to PHI, Dr. Kim, a Staff Engineer of Structures Methodology and Prognosis, was retained by Sikorsky in 2009 to conduct an analysis of a simulated bird strike on a S76 aircraft cockpit to help Sikorsky determine the strike on the S76 canopy structure.  Due to the volume of information considered here, the Court decided to use endnotes.

[2] R. Doc. 1.

[3] The twelve *Johnson* factors are (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to this case; (5) the customary fee; (6) whether fee is fixed or contingent; (7) time limitations; (8) the amount involved and results obtained; (9) the experience, reputation and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *See Johnson*, 488 F.2d at 717-19.

[4] The paralegals are: Dessa Watson-Ferris, Tonja Sanchez, Jodi Jesser, Paulette Keheley, and Tammy Hintz.

[5] Exhibit I, website biography of Martin E. Rose.

[6] Exhibit J, website biography of Don Swaim.

[7] Exhibit K, website biography of Randall K. Theunissen.

[8] Exhibit L, website biography of S. Brian Perry.

[9] Exhibit M, website biography of Ross Cunningham.

[10] Exhibit N, website biography of Alan J. Meche.

[11] Exhibit O, website biography of Steve Sanfelippo.

[12]Exhibit P, website biography of Tammy Cole.

[13]Exhibit Q, website biography of Elizabeth Cunningham.

[14]Exhibit R, website biography of Elizabeth Lemoine.

[15]Exhibit S, website biography of Bryan Rose.

[16]Exhibit T, resume of Stephen L. Baker.

[17]Exhibit U, website biography of Alex Whitman.

[18]Exhibit V, resume of Stephanie Reaugh.

[19]The Court notes that such "block billing" is not favored by the courts.  It is the duty of the attorney seeking his fees to set forth his time on his billing sheets adequately and specifically.  The Court cautions PHI relative to the block billing reflected in the spreadsheets initially submitted to the Court, but also recognizes that PHI subsequently exercised some billing judgment in its subsequent submission to the Court.

[20]03/10/11 - regarding Sikorsky discovery: 0.50 hours reduced to 0.25 hours; 03/28/11 - correspondence regarding discovery and additional documents: 0.30 hours reduced to 0.15 hours; 04/04/11 correspondence regarding discovery and settlement status: 0.60 hours reduced to 0.30 hours; 05/02/11 - correspondence with Paul Sterbcow regarding discovery, correspondence with Mike Slack, review draft discovery responses: 0.80 hours reduced to 0.40 hours; 07/27/11 - correspondence regarding discovery and PHI depositions, correspondence and telephone conference regarding inspection: 0.70 hours reduced to 0.35 hours; 07/29/11 - correspondence regarding PHI and Sikorsky deposition: 0.50 hours reduced to 0.25 hours.  Total reduced hours: 1.7.

[21]02/25/11 - receipt and review of email from Marilynn Donaldson forwarding letter from Kevin R. Tully regarding discovery: 0.20 hours reduced to 0.10 hours; 03/5/11 - receipt and review of email from Fidel requesting discovery status on deposition: 0.20 hours reduced to 0.10 hours; 10/3/11 - receipt and review of email from Paul Sterbcow regarding deposition on 10/5 cancelled: 0.10 hours reduced to 0.05 hours.  Total reduced hours: 0.25.

[22]Attorney used the description "work on discovery related matters" or a similar description for the following billing entries: 06/14/11: 4.10 hours reduced to 2.05 hours; 06/16/ 11 - 5.00 hours reduced to 2.50 hours; 06/17/11 - 4.40 hours reduced to 2.20 hours; 06/20/2011 - 6.80 hours reduced to 3.40 hours; 06/30/11 - 5.90 hours reduced to 2.95 hours; 07/01/11 - 4.10 hours reduced to 2.05 hours; 07/05/11 - 5.10 hours reduced to 2.55 hours; 07/07/11 - 6.10 hours reduced to 3.05 hours; 07/08/11 - 4.90 hours reduced to 2.45 hours; 07/11/11 - 6.10 hours reduced to 3.05 hours; 07/12/11 - 7.30 hours reduced to 3.65 hours; 07/13/11 - 5.40 hours reduced to 2.70 hours; 07/15/11 - 6.00 hours reduced to 3.0 hours; 07/18/11 - 4.80 hours reduced to 2.40 hours; 7/19/11 - 5.00 hours reduced to 2.5 hours; 07/20/11 - 0.40 hours reduced to 0.20 hours; 07/22/11 - 5.30 hours reduced to 2.65 hours; 07/25/11 - 5.8 hours reduced to 2.90 hours; 07/26/11 - 2.50 hours reduced to 1.25 hours; 07/27/11 - 2.50 hours reduced to 1.25 hours; 07/28/11 - 1.50 hours reduced to 0.75 hours; 07/29/11 - 1.50 hours reduced to 0.75 hours; 08/01/11 - 3.50 hours reduced to 1.75 hours; 08/02/11 - 3.50 hours reduced to 1.75 hours; 08/04/11 - 3.10 hours reduced to 1.55 hours ; 08/05/11 - 1.70 hours reduced to 0.85 hours; 08/08/11 - 9.10 hours reduced to 4.55 hours; 08/09/11 - 7.70 hours reduced to 3.85 hours; 08/11/11 - 8.10 hours reduced to 4.05 hours; 08/18/11 - 10.20 reduced to 5.10 hours; 08/19/11 - 6.30 hours reduced to 3.15 hours; 08/22/11 - 8.10 hours reduced to 4.05 hours; 08/23/11 - 8.50 hours reduced to 4.25 hours; 08/24/11 - 11.00 hours reduced to 5.5 hours; 08/29/11 - 7.40 hours reduced to 3.70 hours; 08/30/11 - 7.50 hours reduced to 3.75 hours; 08/31/11 - 9.50 hours reduced to 4.75 hours; 09/01/11 - 5.10 hours reduced to 2.55 hours; 09/02/1 - 1.70 hours reduced to 0.85 hours; 09/06/11 - 7.20 hours reduced to 3.6 hours ; 09/09/11 - 4.70 hours reduced to 2.35 hours; 09/13/11 - 6.40 hours reduced to 3.20 hours; 09/14/11 - 4.70 hours reduced to 2.35 hours; 09/15/11 - 3.80 hours reduced to 1.90 hours; 09/16/11 - 6.80 hours reduced to 3.40 hours; 09/19/11 - 4.10 hours reduced 2.05 hours; 09/20/11 - 2.10 hours reduced to 1.05 hours; 09/21/11 - 9.10 hours reduced to 4.55 hours; 09/22/11 - 8.80 hours reduced to 4.40 hours; 09/23/11 - 9.40 hours reduced to 4.70 hours; 09/26/11 - 6.40 hours reduced to 3.20 hours; 09/27/11 - 8.40 hours reduced to 4.20 hours; 09/28/11 - 8.90 hours reduced to 4.45 hours;

09/29/11 - 6.50 hours reduced to 3.25 hours; 09/30/11 - 7.10 hours reduced to 3.55 hours; 10/04/11 - 9.00 hours reduced to 4.50 hours; 10/05/11 - 8.70 hours reduced to 4.35 hours; 10/06/11 - 11.00 hours reduced to 5.50 hours; 10/07/11 - 8.10 hours reduced to 4.05 hours; 10/10/11 - 8.10 hours reduced to 4.05 hours; 10/11/11 - 7.40 hours reduced to 3.70 hours; 10/13/11 - 9.20 hours reduced to 4.60 hours; 10/14/11 - 7.60 hours reduced to 3.80 hours; 10/17/11 - 11.50 hours reduced to 5.75 hours; 10/18/11 - 9.40 hours reduced to 4.70 hours; 10/19/11 - 10.70 hours reduced to 5.35 hours; 10/20/11 - 7.90 hours reduced to 3.95 hours; 10/21/11 - 6.90 hours reduced to 3.45 hours; 10/24/11 - 11.00 hours reduced to 5.50 hours; 10/25/11 - 5.90 hours reduced to 2.95 hours; 10/26/11 - 8.20 hours reduced to 4.10 hours; 10/27/11 - 8.40 hours reduced to 4.20 hours; 10/28/11 - 4.20 hours reduced to 2.10 hours; 10/31/11 - 5.40 hours reduced to 2.70 hours; 11/1/11 - 3.40 hours reduced to 1.70 hours; 11/2/11 - 4.10 hours reduced to 2.05; 11/4/11 - 4.10 hours reduced to 2.05 hours;11/7/11 - 4.10 hours reduced to 2.05 hours;11/8/11 - 4.70 hours reduced to 2.35 hours; 11/9/11 - 4.30 hours reduced to 2.15 hours; 11/10/11 - 3.80 hours reduced to 1.90; 11/11/11 - 2.90 hours reduced to 1.45 hours;11/14-16/11 - 12.2 hours reduced to 6.10 hours;11/22-28, 30/11 - 15.1 hours reduced to 7.55 hours.  Total reduced hours: 267.10.

[23]03/23/11 - review deposition testimony for reverences of the Requests for Production: 6.10 hours reduced to 3.10 hours; 03/29/11 - review documents to assist with deposition preparation: 2.90 hours reduced to 1.45 hours; 05/23/11 - review document production regarding issues related to 30(b)(6): 2.00 hours reduced to 1.00 hours; 05/25/11 - review document production regarding issues related to 30(b)(6) deposition notice: 5.40 hours reduced to 2.70 hours; 09/16/11 - review document production, review documents to assist preparation for 30(b)(6) depositions: 4.60 hours reduced to 2.30 hours; 09/30/11 - review emails and correspondence to create privilege log: 7.90 hours reduced to 3.95 hours; 10/03/11 - review emails and correspondence to create privilege log: 7.50 hours reduced to 3.75 hours; 10/04/11 - review emails and correspondence to create privilege log: 8.10 hours reduced to 4.05 hours.  Total reduced hours: 22.3.

[24]03/9/11 - Receive and review discovery to insured, correspondence with Sherri Ginger: 0.60 hours; 3/11/11 - telephone conferences with experts regarding inspection, correspondence regarding same: 0.50 hours; 3/23/11 - received and review proposed docket control order in Cantu: 0.20 hours; 3/28/11 - correspondence regarding depositions and additional depositions: 0.30 hours; 4/15/11 - correspondence from expert, Bill Lavallee: 0.30 hours; 5/3/11 - correspondence regarding FAA depositions and settlement, review draft answers to discovery: 0.90 hours; 5/911 - telephone conferences with John Sams regarding funding, receive and review correspondence regarding Turbo mecca documents: 0.50 hours; 5/10/11 - conference John Sams  regarding AAI payment and status of AAI negotiations with Yelton: 0.30 hours; 5/23/11 - review and finalize motion to disqualify expert, Vaughn Ross, begin looking at PHI supplemental discovery responses in anticipation of discovery conference: 1.70 hours; 5/25/11 - receive and review correspondence from Kevin Tully, correspondence with PHI regarding conference call to discuss discovery, etc.: 3.60 hours; 5/26/11 - correspondence with Tom Yakabovich and Bob Cummiskey, review additional documents produced, correspondence regarding deposition of Kirk Gustafson: 2.20 hours; 5/27/11 - receive and review additional documents from PHI, telephone conference with Kevin Tully, etc.: 2.80 hours; 6/3/11 - telephone conference with Mike Slacks office regarding depositions of Cantu plaintiffs, etc.: 6.10 hours; 6/6/11 - receive and review order denying disqualification of expert Vaughn Ross, etc.: 2.90 hours; 6/8/11 - correspondence regarding FAA document production correspondence regarding motion to disqualify, etc.: 2.30 hours; 6/11/11 - Receive and review deposition transcript of Kirk Gustafon: 1.80 hours; 6/13/11 - Review Gustafson deposition exhibit, correspondence with FAA, etc.: 3.50 hours; 6/14/11 - receive and review 30(b)(6) notice of deposition of PHI, conference regarding deponents to respond to notice, etc.: 3.10 hours; 6/15/11 - continued review of PHI documents in preparation for PHI depositions, finalize objections to additional 30(b)(6) notice deposition of PHI, etc.: 2.10 hours; 6/16/11 - meeting with Tom Yakubovich, Michael Hurst and Terry Kaufman in preparation for deposition, etc.: 6.50 hours; 6/17/11 - continued deposition preparation with Tom Yakubovich, Michael Hurst and Terry Kaufman, etc.: 6.10 hours; 6/20/11 - travel to PHI meeting with Bob Cummiskey; deposition preparation of Tony Gonzales and Robert Boullian, etc.: 8.50 hours; 6/21/11 - Attend deposition of Michael Hurst, Meeting with Miguel Chapa regarding settlement:  9.50 hours; 6/22/11 - Present Terry Kaufman for deposition: 8.50 hours; 6/23/11 - attend deposition of Tom Yakubovich, etc.: 8.50 hours; 6/24/11 – Present PHI pilots for deposition, return to Dallas: 7.50 hours; 6/27/11 - Receive and review pilots deposition: 0.50 hours; 7/1/11 - telephone conferences with Mike Slack and Elizabeth Spivey regarding depositions, etc.: 2.60 hours; 7/5/11 - correspondence and telephone conferences with Mike Slack and Rick Christovich, etc.: 2.20 hours; 7/6/11 - attend depositions of Mr. And Mrs. Cantu etc.: 8.50 hours; 7/8/11 - correspondence regarding CVR download; etc.:1.40 hours; 7/13/11 - receive and review notices to take depositions of PHI and PHI employees, etc.: 1.50 hours; 7/20/11 - correspondence and telephone conferences regarding Sikorsky preemption motion, etc.: 1.20 hours; 7/21/11 - correspondence regarding 12(b) motion: 0.50 hours;

7/22/11- correspondence regarding pre-emption motion etc.: 0.70 hours; 7/25/11 - telephone correspondence regarding inspection, PHI depositions and deposition preparation: 0.60 hours; 7/27/11 - correspondence regarding discovery and PHI deposition, etc.: 0.70 hours; 8/8/11 - receive and review pre-trial filings: 0.30 hours; 9/6/11 - Trial preparation meeting with Paul Sterbco, etc.:7.50 hours; 9/11/11 - review and revise draft report of Roch Shipley, correspondence with other experts regarding reports: 0.90 hours; 9/12/11 - revise and finalize expert reports, correspondence and telephone conference: 2.10 hours; 09/15/11 - correspondence regarding plaintiffs expert deposition, etc.:0.50 hours; 10/1/11 - review expert report of Dennis Moore in preparation for his deposition: 2.50 hours; 10/3/11 - receive and review jury focus group, correspondence regarding pretrial order, etc.: 2.60 hours; 10/5/11 - receive and review transcript of sanctions hearing, etc.:1.70 hours; 10/6/11 - travel to New Orleans, meeting with counsel in preparation for pretrial conference, etc.: 9.50 hours; 10/13/11 - attend depositions of plaintiffs experts, Evans and Watson, etc.: 11.50 hours; 10/14/11 - Attend conclusion of Watson deposition, etc.: 7.50 hours; 10/17/11 - attend deposition of Dr. Dennis Moore, etc.:10.50 hours; 10/26/11 - strategy regarding *Daubert* motions in Cantu case, etc.: 1.20 hours; 10/27/11 - correspondence regarding status of settlements, experts and upcoming trial setting in Galveston: 0.40 hours; 11/1/11 - receive and review Cantu Plaintiffs Supplemental Responses, etc.: 1.50 hours; 11/2/11 - receive and review Cantu Plaintiffs' designation of Experts, etc.: 0.80 hours; 11/8/11 - telephone conference with Chris Rodgers regarding status of settlement negotiations in Alabama, etc.: 1.10 hours; 11/9/11 - receive and review Sikorsky exhibit and witness list in Cantu case, etc.: 0.60 hours; 11/16/11 - telephone conferences with Don Gillespie and John Meyer regarding meetings with plaintiff's counsel in Alabama case: 0.60 hours; 11/21/11 - correspondence regarding expert reports for Cantu, etc.: 0.50 hours; 11/22/11 - Correspondence with Roch  Shipley: 0.40 hours; 11/30/11 - correspondence regarding expert filings and reports in Cantu, etc.: 0.90 hours; 12/1/11 - correspondence and telephone conference with expert Bill Lavelle, etc.: 0.60 hours; 12/2/11 - receive and review Sikorsky designation of experts in Cantu case: 0.60 hours; 12/5/11 - correspondence regarding status of settlements: 0.30 hours; 12/12/11 - correspondence with Miguel Chapa regarding settlement: 0.30 hours; 12/20/11 - correspondence regarding upcoming discovery deadlines in Cantu: 0.60 hours; 12/27/11 - correspondence regarding deposition of Plaintiff Sanchez, etc.: 0.60 hours.  Total number of hours disallowed: 179.3.

[25]3/4/11 - work on reply brief in support of PHI's Motion for Leave to Amend its complaint, etc.: 6.20 hours; 4/9/11 - receive and review discovery to insured, etc.: 0.60 hours; 3/24/11 - review and revise proposed AAA/PHI settlement agreement, etc.: 0.90 hours; 5/6/11 - work on briefing related matters with respect to motion to strike, etc.: 6.10 hours; 5/23/11 - work on discovery and brief related matters pertaining to PHI's motion strike Nelson's expert Bobby Ross: 4.60 hours; 6/3/11 - work on discovery related matters, Nelson brief to court of appeals: 3.20 hours; 6/6/11 - continue working on FAA deposition preparation, work on response to Sikorsky Motion to Compel: 4.40 hours; 6/7/11 - finalize response to Sikorsky Motion to Compel, etc.: 5.40 hours; 6/8/11 - continue working on FAA deposition preparation and document production: 4.10 hours; 6/9/11 - review materials and prepare for deposition of FAA representative Kirk Gustafson: 8.40 hours; 6/10/11 - review documents in anticipation of deposition preparation of PHI employees, etc.: 1.80 hours; 6/11/11 - receive and review deposition transcript of Kirk Gustafson (FAA): 1.60 hours; 6/20/11 - continue with preparation activities in advance of PHI depositions: 6.80 hours; 6/21/11 - attend deposition of Michael Hurst, meeting with Miguel Chapa regarding settlement: 9.50 hours; 6/22/11 - present Terry Kaufman for deposition: 8.50 hours; 6/23/11 - continue with defense of PHI depositions, Tom Yakubovich: 10.30 hours; 6/24/11 - finish defense of PHI depositions, conference with counsel regarding upcoming SIK depositions: 5.30 hours; 6/27/11 - begin fourth round of SIK depositions in Shelton, Connecticut: 10.00 hours; 7/21/11 - review 12(b) motion to dismiss filed by Sikorsky based on preemption: 1.00 hours; 8/3/11 - multiple telephone conferences with Sterbcow & Mithoff, etc.: 4.20 hours; 8/8/11 - work on discovery and trial related matters, including filing of witness and exhibit lists: 9.10 hours; 8/10/11 - work on discovery and expert related matters settlement discussions, deposition of Eric Hansen: 11.00 hours; 8/15/11 - travel Lafayette, extended meeting with multiple: 8.10 hours; 8/16/11 - defend depositions of PHI personnel: 12.00 hours; 8/17/11 - defend depositions of PHI personnel: 12.00 hours; 8/18/11 - continue working on discovery, expert and briefing related matters: 10.20 hours; 8/24/11 - attend inspection of airframe components at ASOD, extended meeting with experts to further refine strategy and approach to case: 11.00 hours; 8/31/11 - attend hearing on preemption in New Orleans, etc.: 9.50 hours; 10/2/11 - work on revisions to final Pre-Trial Order, etc.: 5.50 hours; 10/3/11 - finalize and submit final Pre-Trial Order, etc.: 7.10 hours; 10/13/11 - work on pre-trial discovery and expert related matters, etc.: 9.20 hours; 10/17/11 - work on pre-trial, discovery and expert related matters, etc.: 11.50 hours; 10/18/11 - work on pre-trial, discovery and expert-related matters, etc.: 9.40 hours; 10/19/11 - work on pre-trial discovery and expert-related matters, etc.: 10.70 hours; 10/20/11 - work on pre-trial, discovery and expert-related matters: 7.90 hours; 10/24/11 - work on pre-

trial, discovery, expert related matters, etc.: 11.00 hours; 10/25/11 - work on pretrial, discovery and expert-related matters, etc.: 5.90 hours; 11/18/11 - extended work on review and revision of expert reports in support of Cantu case: 5.70 hours; 11/21/11 - continue with extensive work on expert reports in support of Cantu case, etc.: 5.60 hours; 12/1/11 - continue working on trial and discovery related matters in Texas: 3.10 hours; 12/7/11 - attend and participate in 5th Circuit oral argument on Nelson parents' claim: 2.00 hours; 12/9/11 - work on development of joint defense strategy in Cantu: 1.00 hours.  Total number of hours disallowed: 281.4.

[263]3/1/11 - continue assisting in trial preparation matters: 8.30 hours; 3/9/11 - continue working on trial preparation matters: 1.40 hours; 3/10/11 - begin researching for, reviewing and revising reply in support of motion to file first amended claim: 4.40 hours; 3/11/11 - continue working on trial preparation matters: 2.20 hours; 3/14/11 - review and analyze motion for leave to file supplemental briefing in opposition to motion for reconsideration: 2.20 hours; 5/2/11 - continue working on trial preparation matters: 1.10 hours; 6/23/11 - continue working on trial preparation mattes, begin reviewing and analyzing appellant brief filed on behalf of Karen Nelson: 3.30 hours; 5/24/11 - begin reviewing file and preparing outline for Appellee's brief in Nelson appeal: 2.80 hours; 5/26/11 - continue reviewing file and researching issues in preparation of Appellee's brief in Nelson appeal: 3.30 hours; 5/31/11 - continue working on trial preparation matters: 2.70 hours; 6/2/11 - continue working on trial preparation matters: 2.30 hours; 6/6/11 - continue reviewing file, researching for and preparing Nelson Appellee's brief, continue working on trial preparation matters: 6.20 hours; 6/7/11 - continue reviewing file, researching for and preparing Nelson Appellee's brief: 3.30 hours; 6/8/11 - continue reviewing record, researching for and preparing Nelson Appellee's brief: 3.30 hours; 6/9/11 - continue reviewing record, researching for and preparing Nelson Appellee's brief: 1.40 hours; 6/10/11 - continue reviewing record, researching for and preparing Nelson's Appellee brief: 5.20 hours; 6/13/11 - continue reviewing record, researching for and preparing Nelson Appellee's brief, continue working on trial preparation matters: 5.80 hours; 6/15/11 - continue reviewing record, researching for and preparing Nelson Appellee's brief: 2.20 hours; 6/16/11 - continue reviewing record, researching for and preparing Nelson Appellee's brief: 8.80 hours; 6/20/11 - continue reviewing record, researching for and revising Appellee's brief: 6.89 hours; 6/21/11 - continue researching for, reviewing record and revising Appellee's brief in Nelson Appeal: 4.10 hours; 6/22/11 - continue researching for, reviewing record and revising Appellee's brief in Nelson Appeal: 8.70 hours; 6/23/11 - continue reviewing record researching for and revising nelson Appellee's brief: 5.30 hours; 6/24/11 - continue reviewing record, searching for and preparing Nelson Appellee's brief: 7.70 hours; 6/26/11 - continue reviewing record, researching for and preparing Nelson Appellee's brief: 8.30 hours; 7/6/11 - research case law in support of briefing projects: 2.30 hours; 7/7/11 - continue researching issues in support of briefing projects: 2.40 hours; 7/11/11 - review and analyze Nelson Reply brief: 1.20 hours; 7/19/11 - assist with trial preparation matters: 1.40 hours; 7/26/11 - conduct research in support in brief matters: 1.40 hours; 8/4/11 - continue working on briefing issues in preparation for trial: 1.40 hours; 8/5/11 - continue working on trial preparation matters: 1.40 hours; 8/12/11: review and analyze Ross report for preparation of motion to exclude, continue working on trial preparation matters: 1.80 hours; 8/29/11 - prepare for and participate in case analysis and preparation for trial strategy, etc.: 3.30 hours; 8/30/11 - continue working on trial preparation matters: 3.70 hours; 9/6/11 - review and revise motions in limine, etc.: 2.30 hours; 10/3/11 - begin researching issues regarding exclusion of FAA STC certification of windshield, etc.: 2.60 hours; 10/13/11 - continue assisting with trial preparation matters: 2.20 hours; 10/17/11 - continue working on trial preparation matters: 2.30 hours; 10/18/11 - continue working on trial preparation matters: 2.60 hours; 10/12/11 - continue reviewing record, researching for and preparing appellant's brief: 5.30 hours; 10/21/11 - continue working on trial preparation matters: 1.30 hours; 10/24/11 - continue working on trial preparation matters: 2.60 hours; 10/25/11 - continue working on trial preparation matters: 1.30 hours; 10/26/11 - continue working on trial preparation matters: 1.30 hours; 10/28/11 - continue working trial preparation matters: 1.40 hours; 10/31/11 - continue working trial preparation matters: 2.70 hours; 11/2/11 - continue working on briefing issues: 2.20 hours; 11/11/11 - continue working on briefing issues: 3.10 hours; 11/17/11 - continue working on briefing matters: 1.20 hours; 11/21/11 - continue working n briefing issues: 6.40 hours; 11/22/11 - continue working on briefing matters: 7.10 hours; 11/23/11 - continue working on briefing matters: 6.80 hours; 11/26/11 - continue working on briefing matters: 5.30 hours; 11/28/11 - continue working on briefing matters, begin working reviewing Nelson appellate record in preparation for oral argument: 8.30 hours; 11/29/11 - continue reviewing record and briefing in preparation for oral argument: 7.30 hours; 11/30/11 - continue reviewing record and briefing and preparing for Nelson oral argument: 6.30 hours; 12/1/11 - continue reviewing and updating case law: 5.20 hours; 12/2/11 - continue reviewing and updating case law, reviewing record and preparing for oral argument on Nelson appeal: 6.30 hours; 12/3/11 - continue reviewing and updating case law, reviewing record and preparing for oral argument on Nelson appeal: 2.80 hours; 12/4/11 - continue reviewing and updating case law, reviewing record and preparing for oral

argument: 8.30 hours; 12/6/11 - continue reviewing record and preparing for oral argument: 8.10 hours; 12/7/11 - finalize preparation for Nelson oral argument: 6.40 hours.  Total number of hours disallowed: 250.49.

[27]3/3/11 - review correspondence regarding settlement, draft settlement and release regarding same: 2.10 hours; 3/4/11 - correspondence and conference with Plaintiff regarding settlement and final payment of claims: 0.40 hours; 3/9/11 - review and revise response to Plaintiff's first set of discovery: 4.10 hours; 3/23/11 -  review deposition testimony for references of the requests for production: 6.10 hours; 5/2/11 - review PHI documents prepare for deposition of PHI witnesses, etc.: 8.50 hours; 5/23/11 - review document production regarding issues related to 30(b)(6) deposition notice: 2.00 hours; 5/24/11 -  review document production regarding issues related to 30(b)(6) deposition notice: 3.00 hours; 5/25/11 -  review document production regarding issues related to 30(b)(6) deposition notice: 5.40 hours; 5/27/11 - review deposition notice for corporate representatives and draft objections to same: 6.00 hours; 6/9/11 - review documents received from Tom Yakubovich, meet with Tammy Hintz to produce documents to Sikorsky: 0.50 hours; 7/21/11 - meet with plaintiff counsel regarding discovery, review deposition exhibits and testimony to create witness list:  8.50 hours; 7/22/11 - meet with plaintiff counsel regarding discovery, review deposition exhibits and testimony to rate witness list; 7/25/11 - complete drafts of exhibit and witness lists: 8.50 hours; 7/26/11 - review deposition testimony to create database of PWK referenced by deposition: 7.50 hours; 7/27/11 - review deposition testimony to create database of PWK referenced by deposition, update PWK: 4.00 hours; 7/28/11 - review deposition testimony to create database of PWK referenced by deposition: 2.50 hours; 7/29/11 - review deposition testimony to create database of PWK referenced by deposition: 6.00 hours; 8/6/11 - draft confidential settlement memo, review testimony for evidentiary support of the same: 3.00 hours; 8/10/11 - review and revise confidential settlement memo: 1.50 hours; 8/12/11 - review and revise confidential settlement memo: 2.50 hours; 8/15/11 - review and revise settlement memo, review all documents cited with Gillespie's expert report and create document control table: 5.50 hours; 9/6/11 - meeting with plaintiffs counsel regarding case strategy: 8.50 hours; 9/7/11 - review document productions to create production time line, draft letter regarding the same, draft expert disclosure: 6.50 hours; 9/8/11 - review and revise expert disclosure, finalize appendices to file Expert Disclosures: 5.00 hours; 9/12/11 - review and revise motion in limine regarding admissibility of NTSB reports, review and revise draft of Power point presentation: 7.60 hours; 9/13/11 - review and revise motion in limine regarding pilot training materials, review and revise draft Power Point presentation: 5.40 hours; 9/14/11 - review and revise draft of Power Point presentations for Yelton focus group: 3.30 hours; 9/15/11 - review and revise draft of Power Point presentation for Yelton focus group, etc.: 3.80 hours; 09/30/11 - review emails and correspondence to create privilege log: 7.90 hours; 10/3/11 - review emails and correspondence to create privilege log: 7.50 hours; 10/4/11 - review emails and correspondence to create privilege log: 8.10 hours; 10/12/11 - review documents to assist preparations for expert depositions, review exhibit lists, etc.: 8.50 hours; 10/13/11 - review documents to assist preparations for expert depositions, review exhibit lists and co-ordinate documents: 8.00 hours; 10/14/11 - review documents to assist preparations for expert deposition, review exhibits lists, etc.: 7.50 hours; 10/18/11 - review document production to assist with evidentiary support for motion in limine: 3.00 hours.  Total number of hours disallowed: 186.70.

[28]7/7/11 - research case law in support of briefing projects: 3.00 hours; 7/19/11 - research statutes of limitation for Connecticut actions for fraudulent inducement and CUTPA: 2.50 hours; 7/20/11 - research statutes of limitations in Connecticut,  review Louisiana  order to determine if it impacts bringing claims in Connecticut: 5.00 hours; 8/3/11 - research in support of and work on Connecticut petition: 0.60 hours; 8/4/11 - work on Connecticut petition: 1.50 hours; 8/8/11 - continue to work on Connecticut complaint: 2.50 hours; 8/22/11 - determine whether to bring complaint in Connecticut or motion to reconsider, etc.: 3.60 hours; 8/23/11 - work on 60(b) motion based on new evidence: 2.80 hours; 8/24/11 - work on Rule 60(b) motion based on new evidence, revise first amended cross-claim: 3.20 hours; 8/25/11 - work on amended cross claim, etc.: 2.30 hours; 8/25/11 - work on FRCP 60 B motion,  work on amended cross claim: 2.30 hours; 8/26/11 - work on amended cross claim and Rule 60(b) motion: 1.20 hours; 08/29/11 - revised first amended cross claim: 0.80 hours.  Total number of hours disallowed: 31.30.

[29]2/28/11 - receipt and review of email from Cunningham regarding approximate date when helicopter left Sikorsky's control: 0.20 hours; 2/28/11 - receipt and review of email from Putnam regarding approximate date when helicopter left Sikorsky's control: 0.20 hours; 3/2/11 - receipt and review of Sikorsky's Second Supplemental Requests to PHI from Rick Christovich: 0.30 hours; 3/3/11 - receipt and preliminary review of email and attachments from Richard Putnam forwarding copy of Westlaw case: 0.30 hours; 3/3/11 - receipt and review of email from Cunnigham forwarding copy of letter sent to Tully and Miller regarding status of matters sought over the last few weeks: 0.20 hours; 3/4/11 - receipt

and preliminary review of notice electronic filing re:-summary judgment: 0.50 hours; 3/9/11 - telephone conference with Sarah Cable re: filing deadline for reply: 0.20 hours; 3/9/11 - review of FRCP and newly revised local rules for the Eastern District for reply brief information: 0.20 hours; 3/9/11 - email from and to T. Cole re: filing deadline and other issues: 0.40 hours; 3/9/11 - receipt and review of email from Robin Castle of Kevin Tully's office regarding Sikorsky's Second Supplemental Interrogatories: 0.20 hours; 3/9/11 - receipt and review of email from Bob Cummiskey regarding Sikorsky's discovery request: 0.20 hours; 3/10/11 - receipt and review of notice of electronic filing from the court of and Motion for Leave to File Reply in Support of PHI's Motion to Reconsider Order: 0.30 hours; 3/14/11 - receipt and review of notice of electronic filing from the court of and reply to response to motion filed by National Union: 0.20 hours; 3/14/11 - receipt and review of transcript order from Patrick Kehoe: 0.10 hours; 3/14/11 - receipt and review of notice of electronic filing from the court of ex parte /consent motion for additional time to respond to Yelton Plaintiffs' First Supplemental Set of Discovery by Sikorsky: 0.20 hours; 3/15/11 - receipt and review of Sikorsky's 2nd Supplemental RFP of documents to PHI from Christovich: 0.20 hours; 3/15/11 - receipt and review of email from Bob Cummiskey regarding providing responses to discovery requested by Sikorsky: 0.20 hours; 3/15/11 - receipt and review of email from Ross Cunningham to Bob Cummiskey regarding discussing discovery: 0.20 hours; 3/15/11 - receipt and review of email from Bob Cummiskey regarding discovery requested and responding to same: 0.20 hours; 3/17/11 - receipt and review of notice of electronic filing from the court of and reply to response to motion filed by Sikorsky Aircraft, Motion to Reconsideration: 0.30 hours; 3/17/11 - receipt and review of notice of electronic filing from the court of and order granting motion for extension of time: 0.30 hours; 3/21/11 - receipt and review of email form Marilynn Donaldson forwarding copy of letter fm Kevin Tully dated 3/2/11 regarding Sikorsky's electronic production: 0.20 hours; 3/21/11 - receipt and review of correspondence and attachment from Paul Sterbcow to RK Christovich: 0.30 hours; 3/22/11 - receipt and review of email from Ross Cunningham forwarding PHI's First Supplemental RFP to Sikorsky to Rick Christovich and Kevin Tully: 0.20 hours; 3/25/11 - receipt and preliminary review of email and attachments from Robin Castle of Christovich forwarding the overlay file for Sikorsky production: 0.30 hours; 3/25/11 - receipt and review of email from Robin Castle advising that Sikorsky Production: 0.30 hours; 3/25/11 - receipt and review of email from Robin Castle advising that Sikorsky Production Overlay File is Available: 0.20 hours; 3/30/11 - receipt and preliminary review of email and attachments fro Rick Christovich forwarding correspondence and Sikorsky's Responses to AAI's Request for Production: 0.30 hours; 4/4/22 - receipt and review of correspondence from Fifth Circuit: 0.20 hours; 4/4/11 - receipt and review of email from Robin Castle of Christovich forwarding Yelton/ Ballenger: 0.20 hours; 4/14/11 - receipt and review of email from Kevin Tully forwarding notice of oral/video deposition Sikorsky from two Texas state court cases: 0.30 hours; 4/19/11 - receipt and review of notice of electronic filing from the court of order and reasons denying motion for reconsideration: 0.30 hours; 4/21/11 - receipt and review of email from Robin Castle advising of Sikorsky Aircraft Corporation: 0.20 hours; 4/29/11 - receipt and review of email and attachments from Kevin Tully's office forwarding correspondence and deposition notices of PHI pilots: 0.30 hours; 4/29/11 - email to Kevin Tully from Ross Cunningham regarding error in scheduling depositions of PHI witnesses: 0.20 hours; 5/4/11 - receipt and review of email from Crystal Nelson on behalf of Bill Cash re: Nelson v. PHI: 0.20 hours; 5/4/11 - receipt and review of email from Ross Cunningham advising PHI has no objection to extending brief deadline: 0.20 hours; 5/6/11 - receipt and review of email from William Cash's office forwarding correspondence from Cash to U.S. Fifth Circuit: 0.20 hours; 5/11/11 - receipt and review of email from Robin Castile on behalf of Kevin Tully attaching correspondence regarding scheduling depositions and inquiring of PHI document production: 0.20 hours; 5/11/11 - receipt and review of notice of electronic filing from the court of and Letter to Atty Ross Cunningham: 0.20 hours; 5/20/11 - receipt and review of email from R.K. Christovich forwarding correspondence regarding PHI's discovery: 0.20 hours; 5/23/11 - receipt and preliminary review of email to: Ross Cunningham forwarding copy of email from Bill Cash with Nelson's Appellate Brief: 0.60 hours; 5/23/11 - email to Ross Cunningham forwarding copy of email from Bill Cash with nelson's Appellate Brief: 0.20 hours; 5/23/11 - receipt and review of notice of electronic filing from the court of and Doc. 491 Motion to Disqualify Expert Vaughn Ross: 0.20 hours; 5/27/11 - receipt and review of correspondence from Fifth Circuit Court of Appeal direct to William Cash: 0.20 hours; 5/27/11 - email to Ross Cunningham forwarding copy of correspondence received from the Fifth Circuit of Appeal: 0.20 hours; 6/2/11 - receipt and review of correspondence rom the Fifth Circuit Court of Appeals notice of appearance form: 0.20 hours; 6/3/11 - receipt and review of email from Crystal Johnson on behalf of William Cash forwarding copy of appellate in the Nelson cause: 0.20 hours; 6/3/11 - receipt and review of email from Bill Cash requesting to confirm receipt and sufficiency of service of the brief: 0.20 hours; 6/3/11 - email Ross Cunningham requesting if ok to respond affirmatively to Bill Cash: 0.20 hours; 6/6/11 - receipt and review of correspondence from Fifth Circuit Court of Appeal advising Bill Cash that filed document: 0.20 hours; 6/8/11 - receipt and review of Motion for Leave to File Reply in Support of its Motion to Disqualify Vaughn Ross: 0.20 hours; 6/8/11 - receipt and review of

notice of electronic filing, Motion Disqualify Expert Vaughn Ross: 0.20 hours; 6/8/11 - receipt and review of notice of electronic filing from the court of an response in Opposition filed Krystal Mauricio re: Motion to Compel PHI's Response: 0.30 hours; 6/9/11 - receipt and review of email from Kevin Tully confirming will proceed with deposition on Friday: 0.20 hours; 6/9/11 - receipt and review of notice of electronic filing from the court of and response/ memorandum in opposition filed by PHI, Inc.: 0.20 hours; 6/10/11 - receipt and review of email from Rodi F. Rispone regarding N748P wreckage inspection: 0.20 hours; 6/14/11 - receipt and review of email from Crystal Johnson on behalf of William Cash forwarding record excerpts: 0.20 hours; 6/16/11 - receipt and review email from Miguel Chapa forwarding First Amended Deposition Notice of PHI Corporate Representatives: 0.20 hours; 6/16/11 - receipt and review of email from Woody Norwood confirming PHI deposition to be taken at the offices of Allen & Gooch: 0.10 hours; 6/16/11 - receipt and review of email from Ross Cunningham re: will agree previous objections apply to amended notice: 0.10 hours; 6/17/11 - receipt and review of email from Tony Miller requesting line up of 30(b)(6) witnesses: 0.10 hours; 6/17/11 - receive and review of email from Tony Miller re: dates for deposition of pilots: 0.10 hours; 6/17/11 - receipt and review of email from Robin Castle forwarding Amended Notice of Deposition-Tony Gonzales and Robert Bouillion: 0.10 hours; 6/20/11 - receipt and review of notice from U.S. Court of Appeal re: record excerpts: 0.10 hours; 6/20/11 - receipt and review of email from Robin Castle re: Amended Deposition Notice to PHI witnesses: 0.20 hours; 6/21/11 - attendance at and participation in deposition of chief pilot Mike Hurst: 8.40 hours; 6/22/11 - attendance and participation in deposition of Manager of Flight Safety Terry Kaufman: 7.80 hours; 6/23/11 - attendance at and participation in deposition of Tom Yakubovich: 8.10 hours; 6/23/11 - receipt and review of email from Elizabeth Spivey regarding adding additional individuals: 0.10 hours; 6/23/11 - receipt and review of letter from R K Christovich forwarding Appearance of Counsel: 0.10 hours; 6/23/11 - receipt and review of email from Robin Castle regarding witnesses to be deposed: 0.10 hours; 6/23/11 - receipt and review of email from Ross Cunningham regarding location for depositions: 0.10 hours; 6/24/2011 - attendance at and participation in deposition of 3 PHI pilots: 1.50 hours; 6/24/2011 - receipt and review of Notice of Electronic filing-Minute Entry for Motion to Compel filed by Sikorsky Aircraft: 0.10 hours; 6/24/11 - receipt and review of email from RK Christovich re: location for deposition in IN: 0.10 hours; 6/24/11 - receipt and review of email from Jeff Barron re: location in IN for depositions: 0.10 hours; 6/27/2011 - receipt and review of Notice of Electronic Filing-Order re: Sikorsky reply brief to Motion to Compel: 0.10 hours; 6/28/2011 - email to Don Swaim regarding preparation of amended complaint re: fraud/concealment: 0.10 hours; 6/28/2011 - receipt and review of Notice of Electronic Filing-Supplemental Memorandum by Krystal Mauricio, Motion to Compel by Sikorsky: 0.10 hours; 6/28/11 - email to Bryan Rose regarding in chambers status conference set 7-12-11 and handling of case: 0.10 hours; 6/28/11 - receipt and review of email from Bryan Rose confirming handling of in chambers status conference: 0.10 hours; 6/30/11 - receipt and review of Brief of Defendant/Appellee-Sikorsky Aircraft: 0.10 hours; 6/30/11 - receipt and review of Brief of Appellee: 0.10 hours; 6/30/11 - receipt and review of email from Wood Norwood regarding Order to Judge: 0.10 hours; 6/30/11 - receipt and review of email from Paul Sterbcow regarding points on behalf of Yelton family: 0.20 hours; 6/30/11 - receive and review of email from Woody Norwood proposed Order: 0.10 hours; 6/30/11 - receipt and review of email from Paul Sterbcow requesting Order Outline Yelton's concerns: 0.10 hours; 6/30/11 - receipt and review of email from Chris Glover confirming agreement with proposed order: 0.10 hours; 6/30/11 - receipt and review of email from Ross Cunningham regarding agreement reached on 6/28/11, regarding 30 day extension: 0.20 hours; 6/30/11 - receipt and review of email from Ross Cunningham forwarding subpoenas issue to Tony Portelinha & Butler International: 0.20 hours; 7/1/11 - receipt and review of email from Nick Nichols regarding order for extension of expert deadlines: 0.10 hours; 7/1/11 - receipt and review of email from Paul Sterbcow regarding putting together a trial memo and proposal of filing a single liability witness list and liability exhibit list: 0.20 hours; 7/1/11 -receipt and review of confirmation of notice of electronic filing from the court of and supplemental memorandum filed by PHI, Inc.: 0.20 hours; 7/1/11 - receipt and review of email from Richard Putnam regarding Paul Sterbcow putting together a trial memo and filing of single witness list: 0.20 hours; 7/6/11 - receipt and review of notice of electronic filing from the court of and order re: Sikorsky Motion to Compel: 0.20 hours; 7/6/11 - receipt and review of correspondence and attached re-filed brief of Defendant-Appellee Sikorsky Fifth Circuit: 0.50 hours; 7/6/11 - receipt and review of correspondence from U.S. Court of Appeal to Sanfelippo: 0.20 hours; 7/11/11 - receipt and review of email from R.K. Christovich advising Sikorsky needs to be aware of the method and details regarding the extraction regarding CVR: 0.20 hours; 7/12/11 - receipt and review of email from Nick C. Nichols advising Kim Mart has no objection regarding drafting of hold harmless agreement regarding CVR: 0.10 hours; 7/13/11 - receipt and review of notice of electronic filing ex parte/consent motion to appear pro hac vice (Piwetz): 0.20 hours; 7/13/11 - receipt and review of notice of electronic filing from the court, exparte/consent motion Pro Hac Vace (Chant): 0.20 hours; 7/13/11 - receipt and review of notice of electronic filing exparte/consent motion, Pro Hac Vice (Howell): 0.20 hours; 7/14/11 - receipt and review of notice

of electronic filing order grant (Chant): 0.20 hours; 7/14/11 - receipt and review of notice electronic filing order grant (Howell): 0.20 hours; 7/14/11 - receipt and review of email from Crystal Johnson forwarding Letter from William Cash 5th Circuit: 0.20 hours; 7/15/11 - receipt and review of email from Rodi Rispone advising of his expert's availability for Wreckage Inspection: 0.20 hours; 7/15/11 - receipt and review of email from Ross Cunningham to Rick Christovich forwarding response from P&G to his question regarding the Cockpit Voice Recorder: 0.20 hours; 7/15/11 - receipt and review of email from Ladd Sanger regarding proposed wreckage inspection: 0.20 hours; 7/15/11 - receipt and review of email from Ladd Sanger regarding proposed wreckage inspection: 0.20 hours; 7/15/11 - receipt and review of email from Paul Sterbcow responding to Putnam's email regarding Confidential research: 0.20 hours; 7/15/11 - receipt and review of email from Howell advising that AAI is available for wreckage inspection: 0.20 hours; 7/15/11 - receipt and review of email from Howell regarding wreckage inspection: 0.20 hours; 7/15/11 - receipt and review Howell and Cunningham and all counsel regarding wreckage inspection: 0.20 hours; 7/18/11 - receipt and review of correspondence from Calvin Norwood to U.S. Court of Appeals 5th Circuit: 0.20 hours; 7/19/11 - receipt and review of email from Fidel Rodriguez forwarding a copy of case re cost of alternative design: 0.30 hours; 7/19/11 - receipt and review of notice re: Motion for Judgment on the pleadings: 0.30 hours; 7/19/11 - receipt and review of notice re: Oral argument Judgment on Pleadings: 0.20 hours; 7/19/11 - receipt and review of email from Stephen Howell following up to confirm wreckage inspection: 0.20 hours; 7/20/11 - receipt and review of email from Richard Putnam regarding FAA Regulations: 0.20 hours; 7/20/11 - receipt and review of email from Paul Sterbcow inquiring if consent motion to extend expert cut off: 0.10 hours; 07/20/11 - receipt and review of email from Charles Norris responding to Paul Sterbcow's email: 0.10 hours; 7/20/11 - receipt and review of email from John Charrier regarding-preemption issue: 0.20 hours; 07/20/11 - receipt and review of email from Ronnie Penton consent motion: 0.10 hours; 07/20/11 - receipt and review of email from Penton preemption: 0.10 hours; 07/20/11 - receipt and review of email from Putnam-preemption issue: 0.20 hours; 07/20/11 - receipt and review email from Sterbcow preemption issue and FAA regulations: 0.20 hours; 07/20/11 - receipt and review of email from Kevin Tully regarding 12(b)(6) Motion: 0.20 hours; 07/20/11 - received and review from Ross Cunningham regarding 12(b)(6): 0.20 hours; 7/20/11 - receipt and review of notice of electronic filing ex parte/consent motion for discovery: 0.30 hours; 7/20/11 - received and review email from Sterbcow rewarding Motion to Dismiss: 0.10 hours; 07/20/11 - receipt and review of email from Putnam responding Paul Sterbcow's email preemption: 0.20 hours; 7/20/11 - receipt and review of email from Paul back to Putnam email regarding FAA Regulations: 0.20 hours; 7/20/11 - receipt and review of email from Cunningham responding to Paul re: 12(b)(6): 0.10 hours; 7/21/11 - received and review of email and attachment from Paul Sterbcow forwarding motion to extend expert report deadline: 0.20 hours; 07/21/11 - receipt and review of email from Paul Sterbcow advising of continuance: 0.20 hours; 7/22/11 - receipt and review of notice of electronic filing from the court: 0.20 hours; 7/22/11 - receipt and review of notice of electronic filing from the court, motion for continuance: 0.30 hours; 7/22/11 - receipt and review of email from Dee Julian advising counsel for Martin re: wreckage inspection: 0.20 hours; 7/22/11 - receipt and review of email from Tony Miller to Cunningham regarding scheduling PHI remaining witnesses: 0.20 hours; 7/22/11 - receipt and review of email from Cunningham to Miller regarding notices of deposition regarding letter releases vendor from liability regarding CVR: 0.20 hours; 7/22/11 - receipt and review of email from Sterbcow regarding email from Cunningham to Miller requesting info.: 0.10 hours; 7/22/11 - receipt and review of notice of electronic filing-Motion to Continue Hearing: 0.30 hours; 7/22/11 - received and review of notice of electronic filing-Exparte/Consent Motion to Expedite Hearing: 0.20 hours; 7/22/11 - receipt and review of email from Sterbcow advising motion continue hearing: 0.20 hours; 7/22/11 - receipt and review of email from Sterbcow regarding email from Cunningham re: Tony Miller: 0.10 hours; 7/25/11 - receipt and review of notice of electronic filing from the Court ExParte/ Consent Join Motion to extend deadline: 0.20 hours; 7/25/11 - receipt and review of notice of electronic filing from court including Motion to Continue, Expedite, Judgment on the Pleadings: 0.20 hours; 7/25/11 - receipt and review of notice electronic filing Motion to enter stipulated discovery order: 0.20 hours; 7/26/11 - email to Ross Cunningham advising to book boardroom PHI depositions: 0.10 hours; 07/26/11 - received electronic filing from 5th Circuit Karen Nelson Brief: 0.30 hours; 7/26/11 - receipt and review of email from Robin Castle- Notice of deposition of PHI witnesses: 0.30 hours; 7/26/11 - receipt and review of email from Cunningham regarding depositions and advising he is still coordinating: 0.20 hours; 7/26/11 - receipt and review of email from Fidel Rodriguez inquiring of hearing on Aug. 17: 0.10 hours; 7/26/11 - receipt and review of email from Stephen Howell to Ross Cunningham and all counsel requesting confirmation August 24th: 0.20 hours; 7/27/11 - receipt and review from Spivey advising all counsel to keep Ladd Sanger and Nikki Correll on all distribution lists for case: 0.10 hours; 7/27/11 - receipt and review of email from Joseph Alexander regarding Putnam's research on preemption: 0.10 hours; 7/28/11 - receipt and review of notice of electronic filing from the Fifth Circuit copies of appellant brief: 0.10 hours; 7/28/11 - receipt and review of notice of filing order status conference: 0.20 hours; 7/31/11 - received and review of email from

Richard Putnam regarding Status conference: 0.10 hours; 8/1/2011 - receipt and review from Tully regarding depositions and regarding conferences tomorrow with Judge: 0.10 hours; 8/2/11 - receipt and review of email of notice regarding minute entry Judge Barbier: 0.20 hours; 8/5/11 - receipt and review of notice electronic filing witness and exhibit list by Pamela Claire Rivero: 0.30 hours; 8/5/11 - receipt and review of notice of electronic Witness and Exhibit List by Hannah Tarpley: 0.20 hours; 8/8/11 - receipt and review notice witness list and exhibit list by Boudreaux: 0.20 hours; 8/8/11 - receipt and review notice witness list and exhibit by Rivero: 0.20 hours; 8/8/11 - receipt and review notice witness list and exhibit list Mauricio: 0.30 hours; 8/8/11 - receipt and review witness list by Martin: 0.20 hours; 8/8/11 - receipt and review exhibit list by Martin: 0.20 hours; 8/8/11 - receive and review exhibit list by Yelton: 0.20 hours; 8/8/11 - receipt and review of witness list, Yelton: 0.20 hours; 8/8/11 - receipt and review of witness list by Sikorsky Aircraft Corporation: 0.30 hours; 8/8/11 - receipt and review witness lists all plaintiffs: 0.20 hours; 8/8/11 - receipt and review exhibit list all plaintiffs: 0.30 hours; 8/8/11 - receipt and review of court notice re: Sikorsky Exhibit List: 0.30 hours; 8/8/11 - receipt and review of notice from court Second Witness List: 0.20 hours; 8/8/11 - receipt and review of PHI exhibit list: 0.20 hours; 8/8/11 - receipt and review of notice witness list PHI: 0.20 hours; 8/8/11 - receipt and review of notice from court Witness and Exhibit Schoen: 0.20 hours; 8/8/11 - receipt and review of court notice Witness list by Aeronautical: 0.20 hours; 8/8/11 - receipt and review of email and attachment from Ross Cunningham requesting draft records subpoena to MMR: 0.30 hours; 8/8/11 - email to Ross Cunningham advising that it will handle records subpoena: 0.20 hours; 8/9/11 - receipt and preliminary review of email Dr. Mariuz Ziejewski for Yeltons: 0.20 hours; 8/9/11 - receipt and review of email from Sterbcow report not received by some: 0.20 hours; 8/9/11 - receipt and review notice from Court Order by Barbier: 0.20 hours; 8/10/11 - review of file materials and preparation of NOD MMR corporate depo: 2.30 hours; 8/11/2011 receipt and review of email from Tammy Hintz notice of PHI depo: 0.20 hours; 8/11/11- receipt and review of email from Welch forwarding expert report by Plaintiff Martin: 0.20 hours; 8/12/11 - receipt and review of notice Motion to Enroll Counsel Sikorsky: 0.20 hours; 8/8/11 - receipt and review of email Castle forwarding Notice of Depo: 0.20 hours; 8/12/11 - receipt and preliminary review of notice from Court-Response to Motion Judgment on Pleading: 0.30 hours; 8/12/11 - receipt and review of email and attachment from Castle forwarding Yelton and Gutierrez: 0.30 hours; 8/12/11 - receipt and preliminary review from Sterbcow liability expert report: 0.30 hours; 8/12/11 - receipt and review of email Sterbcow forwarding Rule 26 for liability expert report: 0.20 hours; 8/12/11 - receipt and preliminary review of Randy Rices revised report on Nelson: 0.30 hours; 8/12/11 - receipt and preliminary review of email and attachment Sterbcow forwarding expert report Gillespie-Meyer: 0.30 hours; 8/12/11 - emails from and to process server regarding MMR subpoena: 0.20 hours; 8/12/11 - emails process server advising of service MMR Group 30(b)(6) deposition: 0.20 hours; 8/15/11 - receipt and review of email from Sammie to be added to list: 0.10 hours; 8/15/11 - receipt and review of email from Sterbcow forwarding FRCP 26 Meyer and Gillespie: 0.20 hours; 8/15/11 - receipt and review of email from Tully regarding cancellation of deposition of Asher and Gutierrez: 0.20 hours; 8/16/11 - receipt and review email from Spivey requesting to email distribution list: 0.20 hours; 8/16/11 - receipt and review of notice from court supplemental witness list by Yelton: 0.20 hours; 8/17/11 - attendance at and participation in depositions Lopez Bouillion, Dubois and Grabert: 7.30 hours; 8/18/11 - receipt and review of notice Motion to Enroll Counsel: 0.20 hours; 8/18/11 - receipt and review of email and attachment from Cunningham to Tully forwarding PHI's first Notice of 30(b)(6) deposition Sikorsky: 0.20 hours; 8/19/11 - receipt and review notice of Pro Hac vice Miller: 0.30 hours; 8/22/11 - receipt and review of email from Tully forwarding letter re Cunningham's Rule 30(b)(6): 0.20 hours; 8/22/11 - receipt and review of notice supplemental exhibit list by PHI: 0.20 hours; 8/23/11 - receipt and review of notice from court ex parte/consent motion excess pages by Allen: 0.30 hours; 8/24/11 - receipt and review of notice from court regarding pro hac vice: 0.20 hours; 8/24/11 - receipt and review of notice as to Coleman: 0.20 hours; 8/25/11 - receipt and review appeal transcript: 0.20 hours; 8/25/11 - receipt and review notice ex parte consent motion for leave to file reply memorandum to support judgment: 0.30 hours; 8/26/11 - telephone conference with counsel for MMR discussing 30(b)(6) deposition: 0.20 hours; 8/26/11 - correspondence to Patrick Bruno discussing 30(b)(6) deposition MMR: 0.20 hours; 8/26/11 - receipt and review of correspondence from Ross Cunningham discussing Tully deposition: 0.20 hours; 8/26/11 - receipt and review of notice Order motion for leave to file reply with excess pages: 0.20 hours; 8/26/11 - receipt and review of correspondence from Ross Cunningham discussing production of relevant documents in lieu of live deposition: 0.20 hours; 8/29/11 - receipt and review of email from Patrick Bruno regarding document production without live deposition in re MMR 30(b)(6) deposition: 0.20 hours; 8/29/11 - receipt and review of email from Cunningham to Bruno with inquiry regarding his production to MMR 30(b)(6): 0.20 hours; 8/30/11 - receipt and review of notice of Reply to response to Motion for Judgment on the pleadings: 0.20 hours; 8/21/11 -receipt and review of correspondence from Bruno discussing MMR's document production: 0.20 hours; 8/31/11 - receipt and review of notice of minute order from Judge Barbier: 0.20 hours; 8/31/11 - receipt and review of email from Bruno regarding document production for

MMR 30(b)(6): 0.20 hours; 9/1/11 - receipt and review of notice of minute entry for proceeding before Judge Barbier settlement conference: 0.20 hours; 9/1/11 - receipt and review of notice of minute entry from Judge Barbier regarding settlement conference as to Schoen and PHI: 0.20 hours; 9/1/11 - receipt and review of court notice for settlement conference as to Martin and Sikorsky: 0.20 hours; 9/1/11 - receipt and review of court notice before Judge Barbier as to Tarpley and others: 0.20 hours; 9/1/11 - receipt and review of court notice of amended order: 0.20 hours; 9/1/11 - receipt and review of email from Burns forwarding copy scheduling his experts depositions: 0.20 hours; 9/2/11 - receipt and preliminary review of email from Bruno of MMR's response to PHI's SDT: 0.60 hours; 9/2/11 -receipt and review of email from Tully regarding Sikorsky request for inspection of PHI property: 0.20 hours; receipt and review of correspondence from Patrick Bruno providing copies of MMR responses PHI subpoena duces tecum: 0.20 hours; 9/6/11 - receipt and review of court notice of supplemental witness list by Boudreaux, Sr.: 0.20 hours; 9/7/11 - receipt and review of notice of supplemental witness list by Boudreaux: 0.20 hours; 9/8/11 - receipt and review of court notice of response to motion filed by Boudreaux and others: 0.20 hours; 9/12/11 - receipt and review of court notice of expert disclosures: 0.20 hours; 9/12/11 -receipt and review of email from Castle forwarding correspondence from Christovich regarding expert reports and disclosure: 0.20 hours; 9/12/11 - receipt and review of email from Alexander advising that he did not attach Expert Reports and Disclosure: 0.10 hours; 9/12/11 - receipt and preliminary review of expert reports and disclosures from Christovich: 1.00 hours; 9/12/11 - receipt and review of email from Hintz forwarding download for PHI's expert disclosures: 0.30 hours; 9/13/11 - receipt and review of email from Castile on behalf of Tully forwarding notice of deposition for PHI witnesses: 0.20 hours; 9/13/11 - receipt and review of email from Cunningham advising Notice of Deposition for Sept 27-29: 0.20 hours; 9/14/11 - receipt and review of email from Castle forwarding signed report of Evans: 0.20 hours; 9/14/11 - receipt and preliminary review of email and attachments from Burns regarding Depositions: 0.50 hours; 9/14/11 - receipt and review of email from Rose regarding PHI's portion of joint pretrial order: 0.20 hours; 9/15/11 - receipt and review of notice of ex parte/consent motion to enroll: 0.20 hours; 9/15/11 - receipt and review of notice of electronic filing motion to enroll as counsel of record for Mary Anna Penton: 0.20 hours; 09/16/11 - receipt ad review of notice to exclude opinions of Rice: 0.20 hours; 9/19/11 - receipt and review of email from Hintz forwarding copy of letter enclosing PHI's motion to exclude Rice: 0.20 hours; 9/21/11 - receipt and review of notice ex parte enroll as counsel Rhorer: 0.20 hours; 9/25/11 - receipt and review of email from Cunningham to Coleman responding to his inquiries: 0.20 hours; 9/25/11 - receipt and review of email Coleman regarding Yelton Deposition: 0.20 hours; 9/25/11 - receipt and review from Cunningham responding to Coleman regarding inspection of records: 0.20 hours; 9/25/11 - receipt and review of email from Castle forwarding copy of Tully's correspondence to Barbier: 0.20 hours; 9/26/11 - receipt and review of voice mail from Allen regarding deposition tomorrow: 0.20 hours; 9/26/11 - email to and from Laura Reves regarding Glover's attendance of deposition by telephone: 0.20 hours; 9/27/11 - receipt and review of notice response memorandum in opposition to exclude opinions of Rice: 0.20 hours; 9/27/11 - receipt and review of email from Patrick Schepens with inquiry regarding Yelton: 0.10 hours; 9/29/11 - receipt and review notice of order granting motion for leave to file reply: 0.20 hours; 10/3/11 - email from Sterbcow forwarding copy of pre trial order electronically: 0.20 hours; 10/4/11 - receipt and preliminary review of notice of and proposed pretrial order: 0.50 hours; 10/5/11 - email to Cunningham regarding attendance at pretrial conference: 0.20 hours; 10/6/11 - receipt and review of email from Sterbcow regarding deadline for trial depositions: 0.20 hours; 10/7/11 - receipt and review of email from Sterbcow regarding status rescheduling: 0.10 hours; 10/11/11 - receipt and review of email Sterbcow regarding trial depositions cuts, destinations and counter designations: 0.20 hours; 10/11/11 - receipt and review of email Sterbcow inquiring of status on rescheduling Drost deposition: 0.10 hours; 10/12/11 - receipt and review of notice of proposed pretrial order: 0.50 hours; 10/14/11 - receipt and review of email from Hintz forwarding PHI production photographs: 0.20 hours; 10/14/11 - receipt and review of email from Castle notice scheduling the deposition of Drost: 0.20 hours; 10/14/11 - receipt and review of notice of and ex parte/consent motion in limine by Boudreaux: 0.20 hours; 10/19/11 - receipt and review notice or response memorandum in opposition to motion to continue by Hanna: 0.20 hours; 10/19/11 - receipt and review of notice of order regarding settlement: 0.20 hours; 10/20/11 - receipt and review of notice of order on motion to dismiss: 0.20 hours; 10/20/11 - receipt and review order amending scheduling order: 0.20 hours; 10/20/11 - receipt and review of notice of minute entry for proceeding before Judge Barbier: 0.20 hours; 10/20/11 - receipt and review of notice and order to exclude expert opinion: 0.20 hours; 10/23/11 - receipt and review of notice of motion in limine to exclude NTSB report: 0.20 hours; 10/23/11 - receipt and review of notice of and motion in limine to exclude evidence of subsequent remedial measure: 0.20 hours; 10/23/11 - receipt and review of motion in limine to limit testimony and opinion of Ziejewsky: 0.20 hours; 10/23/11 - receipt and review of notice motion in limine to exclude FAA: 0.20 hours; 10/23/11 - receipt and review of ex parte consent motion exclude FAA: 0.20 hours.  Total number of hours disallowed: 92.60.

[30]6/1/11 - reviewing amended local rules for the deadline to file opposition briefs in the Eastern District and email to Don Swaim: 0.30 hours; 6/1/11 - email from Don Swaim regarding telephone conference to discuss motion to compel: 0.10 hours; 6/1/11 - receipt and review of email from Swaim requesting to discuss case sometime tomorrow: 0.10 hours. Total number of hours disallowed: 0.50.

[31]PHI sought 3,543.50 hours.  However, the Court reached this number after adding up the invoices submitted by PHI.

[32]This figure represents hours related to the discovery delay and spoilation of Dr. Kim's data and files plus a reasonable amount of hours associated with drafting the instant motion.  The Court conducted a line by line analysis of the billing invoices, which included a request for reimbursement for the hours worked drafting the instant motion.

[33]According to the attorney billing statements submitted by PHI, its are as follows:

| | |
|---|---|
| Transcribing depositions | $62,307.77 |
| Copying/Outside Printing | $6,162.32 |
| Delivery Services | $16,730.00 |
| Out of State Travel Expenses | $44,057.07 |
| Local Travel Expenses | $2,150.34 |
| Meals | $352.64 |
| Travel Service Fees | $12.50 |
| Litigation Support | $76,536.84 |
| Expert costs related to Dr. Kim's report and recreating Lost Data | $883,612.75 |
| **TOTAL** | **$1,091,922.23** |

[34]PHI contends that it included a request for travel, including airfare, lodging and meals for attorneys who traveled to Connecticut and elsewhere to depose Dr. Kim and other Sikorsky employees on matters relating to the spoliation and Dr. Kim's report and for the costs of travel to New Orleans for the September hearing on the Motion for Sanctions.  PHI submits that these trips and expenses were only necessary because of Sikorsky's spoliation and would not have taken place but for the discovery of Dr. Kim's report.

[35]PHI contends that it expended costs for its experts to recreate Dr. Kim's spoliated data files and to respond to, analyze, and test the validity of Dr. Kim's report and conclusions.  PHI has provided affidavits from each expert in which they describe and state that the expenses that were directly attributable to Dr. Kim's analysis and report, and it further reiterates that it only seeks costs that are within the confines of this court's order.

[36]In support of its costs request, PHI submitted Exhibit A-4 which purportedly details the coss of all deposition transcripts, travel expenses and litigation support, meals, out of town travel and copying and printing.  However, this report is insufficient as the corresponding back ups were not included.  The court notes that some of the printing costs included an appellate brief for an unrelated claimant.

[37]Shipley indicates that the total amount of expert fees charged by ProAaCI was $348,453.08.